STATE OF MISSOURI, Respondent, v. HENRY TROTT
et al., Appellants.

St. Louis Court of Appeals, April 16, 1889.

1. Practice, Trial : CONTINUANCE. When it does not clearly appear that proper diligence was used to procure the attendance of an absent witness, an appellate court will not interfere with the trial court's discretion in refusing a continuance.

2. Criminal Law : GAMBLING DEVICE. An indictment charging that money was bet on a game called "seven-up," played with cards, sufficiently charges that it was bet on a gambling device, within the meaning of Revised Statutes, section, 1548.

8. **Evidence:** IMPROPER QUESTION TO DEFENDANT, AS WITNESS. It was prejudicial misconduct in the prosecuting attorney, to ask a defendant in his cross-examination as a witness, under an indictment for gambling, if he had ever before played cards for money, when no such matter had been touched upon in his examination in chief. The error and unfairness to the defendants on trial was not cured by the court's sustaining an objection to the question and directing the jury not to consider the answer as evidence.

*Appeal from the Stone Circuit Court.*—HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*Albert Hodges*, for the appellants.

The court below committed error : *First.* In overruling defendants' application for a continuance. " A continuance should always be granted where the facts and circumstances of the case are of a nature to warrant ; and where the evidence sought to be obtained is material and must, if adduced, have produced a different result in the verdict and the issue of the case." 1 Mo. 700 ; 6 Mo. 444 ; 8 Mo. 500 ; 12 Mo. 492 ; 31 Mo. 147 ; 43 Mo. 127 ; 92 Mo. 41 ; and 94 Mo. 79, 312, 648, and cases there cited. *Second.* In overruling defendants' motion for a new trial. "In criminal cases the court should set aside the verdict of the jury and direct a new trial if the conviction is not warranted by the evidence." Added to this the tender years of the defendants, their ignorance of the law and the charge against them, their poverty, the shortness of their arrest before court, the justness and the spirit of the law as well as the weak case made by the state against the defendants. *State v. Bird*, 1 Mo. 585 ; *State v. Mansfield*, 41 Mo. 470 ; and 53 Mo. 65. *Third.* In overruling the defendants' motion in arrest of judgment. Of the many and different sections of criminal law against gambling there are

none under which this indictment would be good.    10 Mo. 698; 9 Mo. 624; 25 Mo. App. 554; 1 Chit. Cr. L. 661; Whart. Crim. Law, pp. 116-17

THOMPSON, J., delivered the opinion of the court.

The defendants, two boys aged about fourteen and fifteen years respectively, were jointly indicted under the statute against gambling. The indictment charged that at a time and place named they did unlawfully bet a sum of money; to-wit: $1.50, upon a game of cards, commonly called seven-up, then and there played by means of a certain gambling device, to-wit: A pack of cards adapted for the purpose of playing games of chance for money and property, against the peace and dignity the state.

They were arrested under the indictment on the sixth of February, and on the same day entered into a recognizance for appearance at the next term of the circuit court. This term of the court began on the twentieth of February.

When the case was called for trial, the defendants made the following affidavit for continuance : " Defendants cannot safely proceed to the trial of this cause at the present term of this court, on account of the absence of Sam Trott and Sam Kline, who are material witnesses in the trial of this cause. That if said witnesses were present would swear, that they were present at the time and place which it is alleged that said game of chance was played; and know that said game of cards, commonly called seven-up was played by said defendants as a matter of amusement, and that there was no money, property, or anything of value bet on said game. That defendants believe said testimony to be true, and they know of no other witnesses by which they can prove the same facts, whose testimony can be as readily procured. That due diligence has been used to obtain the testimony of said witnesses. That defendants were arrested

only a few days before the convening of the present term of this court; that they came to the town of Galena (the county seat) on Monday, the first day of the present term of this court, and caused a subpœna for said witness to be issued by the clerk of this court and placed in the hands of the sheriff of Stone county; that said subpœna has not been returned to this court. Defendants would further state that they had no counsel, and had no opportunity to employ counsel, until the first day of the present term of this court, and did not know what was necessary to be done to prepare for the trial of this cause. That said witnesses reside in the county of Stone, about twelve miles north of the town of Galena. That if this cause is continued until the next term of this court, defendants will be able to procure the attendance of said witnesses to be used on the trial of this cause. That said witnesses are not absent by the connivance, procurement or consent of the defendants. That this application is not made for vexation or delay merely, but to obtain substantial justice on the trial of this cause."

The bill of exceptions recites that, "the state resisted the application for a continuance and offered in evidence against the application the recognizance of the defendants, given February 17, 1888, in Stone county, for their appearance on the first day of the present term of this court, to-wit: February 20, 1888," etc. The court overruled the application for a continuance and the state being ready ordered the trial to proceed. To this ruling the defendants excepted. This was on the second day of the term.

The refusal to grant this continuance was assigned by the defendants in their subsequent motion for a new trial, and in opposition thereto the state offered, for the purpose of showing that the defendants had not used proper diligence, an affidavit of the deputy sheriff who arrested them under the *capias*, to the effect that when he arrested them and they entered into bond for their

appearance, he informed Henry Trott, one of them, that they would be tried at this term and advised them to get ready for trial, and told them to come to the clerk and have the witnesses in their behalf subpœnaed and that he would serve all subpœnaes that they thought necessary in their defense.

I. The general rule is, that the granting or refusing of a continuance is a matter which rests in the sound discretion of the trial court, which discretion will not be revised on appeal, unless it plainly appears that it has been abused. Affidavits for continuance are often drawn and presented for the mere purpose of securing delay and they are hence closely scanned and as a general rule convictions will not be reversed for the refusal of continuances where the affidavits are deficient in any substantial particular. The affidavit in this case is drawn in compliance with section 1884, Revised Statutes, and is sufficient unless it fails to make it appear that due diligence was not used to procure the absent witnesses. As they resided but twelve miles from the court house and as the defendants were let to bail immediately upon their arrest, which is shown to have been two weeks before the convening of the court, and as the deputy sheriff, according to his uncontradicted affidavit, advised them of the manner of procuring their witnesses, it does not appear that due diligence was used by them in procuring them. Was such diligence excused by reason of the fact deposed to in the affidavit that they had no opportunity to employ counsel until the day before the trial, that is, until the first day of the court? If there had been anything difficult or complicated in their defense, the inability to procure counsel until that time may have afforded a sufficient excuse for the want of diligence in procuring the witnesses' names. But as the witnesses were expected to prove a fact so simple and obvious as that the defendants did not really wager any money or property on the

game which they played, but played the game merely in sport, it is difficult to understand that they should need counsel to suggest to them the advisability of summoning witnesses on so simple a point. It is true that the defendants were minors, and presumably not possessed of sufficient discretion to think of such matters for themselves, but they had adult friends who gave bail for their appearance and who must be presumed to have been capable of suggesting a point so obvious. There is some difficulty in the question, whichever way it is viewed ; but we think that the rule of procedure which commits such matters to the sound discretion of the circuit court must be upheld in this case.

II.   The indictment is challenged as not being good under any statute of this state. It seems to have been drawn under the statute against betting on gambling devices, which provides that "every person who shall bet any money or property upon any gaming table, bank or device, prohibited by the preceding section, or at any or upon any other gambling device, * * * shall be adjudged guilty of a misdemeanor," etc.   It is to be observed that the indictment as already set out charges the defendants with having bet the sum of $1.50 upon a game of cards called seven-up, then and there played, by means of a certain gambling device, to-wit: A pack of cards, adapted for the purpose of playing games of chance for money and property.   In *State v. Herryford*, 19 Mo. 377, which was an indictment under the preceding section of the same statute as it then stood on our statute book, it was held that cards were a gambling device within the meaning of the statute and that an indictment charging that the defendant "did wilfully permit a certain gambling device, commonly called cards, adapted, devised and designed for the purpose of playing at games of chance for money and property, to be then and there used, for the purpose of gaming in a certain house, then and there being

situated, of which house the defendant had possession,"
—stated an offense under that section of the statute.
This court might have difficulty in taking judicial notice
of the fact that the so-called game of seven-up is a
game of chance, but as it has been thus judicially
determined in this state that cards are a gambling
device, we are disposed to hold, without reference to
the name of the particular game, that an indictment
charging that money was bet on a game of cards,
charges that it was bet on a gambling device within the
meaning of section 1548, Revised Statutes.

III. While the defendant Cloud was being
examined as a witness the state's attorney asked him
on cross-examination : "Did you ever play cards before
for money ?" Before his counsel could object, Cloud
answered : "Yes." Objection was then made to the
question, which the court sustained and the court orally
instructed the jury not to consider it as evidence. It is
well settled in this state that where an accused person
elects to take the witness stand in his own behalf, his
cross-examination must be confined to matters which
were touched upon in his examination in chief, and
that it cannot extend beyond this, although the ques-
tion put may pertain to the issues. *State v. Chamber-
lain*, 89 Mo. 129 ; *State v. McGraw*, 74 Mo. 573 ; *State v.
Patterson*, 88 Mo. 88; *State v. Douglas*, 81 Mo. 231 ;
*State v. Porter*, 75 Mo. 171 ; *State v. McLaughlin*, 76
Mo. 320 ; *State v. Turner*, 76 Mo. 350. The question,
thus put to the witness by the state's attorney, was not
only not pertinent to the witness' direct examination, or
to the issues, but it was inadmissible as evidence against
him on any theory, and it thrust into the minds of the
jurors an irrelevant matter which was highly prejudicial
to the accused. The state's attorney must have known
that the answer called for by the question was inadmis-
sible, and, if he knew it, the putting of such a question
to the accused was so unfair and improper that it may

be doubted whether it could be deemed to have been cured by the prompt action which the court took. It is to be observed in connection with this point, that the evidence is in a very unsatisfactory state. Indeed, it seems to preponderate in favor of the defendants, and to leave the conclusion very doubtful whether they were gambling or merely playing in childish sport. In such a state of the evidence it is our duty to see that they have had a fair trial. We can scarcely doubt that the scale was turned against them in this instance by the irrelevant matter which was thus thrust into the minds of the jurors.

For this misconduct of the prosecuting attorney, the judgment will be reversed and the cause remanded. All the judges concur.