BUSH ELLIOTT v. STATE OF NEBRASKA.

[FILED FEBRUARY 24, 1892.]

1. **Larceny:** AFFIDAVIT FOR CONTINUANCE. In a prosecution for the larceny of thirty-three horses and also for receiving the same, knowing them to have been stolen, an affidavit for a continuance was filed by the accused, which was overruled. *Held,* That the facts stated in the affidavit were sufficient to entitle the party to a continuance.

2. ———: MISCONDUCT OF PROSECUTOR. Where the accused was a witness in his own behalf the prosecuting officer, on cross-examination, asked him: "Is it not a fact that you stole a horse in Burnett county, Texas? Don't you know the sheriff has a warrant for you for stealing a horse in that county?" and other similar questions not connected with the crime charged. *Held,* Improper and prejudicial.

3. ———: INSTRUCTIONS. An instruction in a criminal case that " you should be satisfied of the truth of the material allegations contained in the particular count of the information," without stating from what the jury was to be satisfied or the degree of proof required to convict, is erroneous.

4. ———: ———. Instruction set out in the record as No. 4, *held*, to contain matter prejudicial to the accused.

ERROR to the district court for Cheyenne county. Tried below before HAMER, J.

*Thomas H. Matters*, for plaintiff in error, cited, as to the improper questions by the prosecutor: *State v. Red*, 53 Ia., 69; *People v. Lyons*, 49 Mich., 78; *Lamb v. State*, 5 Cent. Rep. [Md.], 775.

*Wm. Leese, Attorney General, contra.*

MAXWELL, CH. J.

The plaintiff in error was informed against by the county attorney of Cheyenne county upon two counts. First, for the larceny of seventeen geldings and sixteen mares, the property of Wyatt & Abington, of the value of $1,485; and, second, for receiving said property, knowing it to have been stolen. On the trial of the cause he was found guilty and sentenced to imprisonment in the penitentiary for five years. A number of errors are assigned:

"First—That the court overruled a motion for a continuance."

It appears from the record that the plaintiff in error had an examination on the charges above stated before the county judge of Cheyenne county on the 2d day of June, 1888, and was required to give bonds in the sum of $1,000, in default of which he was committed to jail and remained there until the trial. It also appears that on the 24th of July of that year the county attorney of that county filed the information in question; that on the 23d day of July, there being an adjourned term of the district

7

court, the plaintiff filed an affidavit for a continuance, which motion was overruled. Again, on the 31st of that month, he filed a second motion supported by affidavits, which was also overruled, and this is the first error complained of. The affidavits in support of the motion show due diligence of the plaintiff under the circumstances, that certain witnesses named would testify to certain facts, which are set out, which will tend to show that the plaintiff had not stolen the horses referred to or knowingly received stolen property. The plaintiff's affidavit is very long and will not be set out at length in the opinion, but sufficient is shown to entitle the plaintiff to a continuance for a sufficient length of time to enable him to procure the witnesses named. It is not the policy of the law, particularly in a case like that under consideration, where there is doubt about the guilt of the accused, to compel the party to go to trial until a reasonable opportunity has been given to procure the attendance of witnesses.

"Second—That the court erred in permitting the county attorney to ask questions calculated to prejudice the minds of the jury."

The plaintiff was a witness in his own behalf and on cross-examination the county attorney asked the accused the following questions:

Q. Were you ever in Burnett county, Texas?

A. Yes, sir.

Q. Is is not a fact that you stole horses in Burnett county?

A. I never did; no, sir.

Q. Don't you know that the sheriff has a warrant for you for stealing a horse in that county?

A. I don't know it; no, sir.

And other questions of like character. Such cross-examination is highly improper and cannot fail to be prejudicial. A prosecuting officer, in his zeal to enforce the law must not forget that he also occupies a semi-

judicial position, and that his duty requires him to resort to no questionable or improper means to secure a conviction. The emblem on every court house, of justice holding the scales in equipoise, would be a meaningless symbol if even one of the poorest and most abject of human kind was unjustly dep ived of a right. The state—the people collectively in their corporate capacity—will not, through its officers, be permitted to do acts which every fair-minded individual thereof would condemn, and which, as individuals, they would not sanction. The questions quoted and others of like kind must have been prejudicial to the accused. Where a defendant in a criminal case offers himself as a witness on his own behalf, he is subject to the same rules of cross-examination as other witnesses, and, it is the duty of the court to keep the cross-examination within the law.

The court instructed the jury as follows:

"Second—In criminal cases the burden of proof is always upon the state. Before you can find the defendant guilty, you must be satisfied of the truth of all the material allegations contained in the particular count of the information under which you may find the defendant guilty, if you do so find."

"Fourth—You are the judges of the credibility of the witnesses who have testified in this case. You will determine which of them you believe, and you can reject part of the testimony and accept part—you are not obliged to accept as true the testimony of any witness, simply because such testimony is a statement under oath. In this connection it is proper to say to you that in many cases witnesses purposely testify to that which they know to be false, with the object in view of thereby helping friends or relatives. In many other cases witnesses are mistaken as to the exact facts which they undertake to recite, and the mistakes they make are honest mistakes. There is no unvarying rule for telling an honest witness whenever you may see him,

and a lying witness may tell the truth oftener than a lie.
The honest witness may be' mistaken when he is most cer-
tain he is right, and a witness who is not very honest may
make mistakes when he aims to tell the truth—may pur-
posely tell a part of the truth, suppress a part and exag-
gerate the remainder, while to the whole story he adds
a falsehood of his own invention, or one suggested by
those whom he hopes to serve. Out of such patchwork as
this must the honest, conscientious juror strive to find the
exact facts, and no court can give him any rule by which
he may certainly find them. There are, however, in most
cases known facts about the existence of which is no dis-
pute, and in this case such facts as you find proven and
undisputed may seem as landmarks to guide your other-
wise uncertain course in determining the truth or falsity
of the matters in dispute. If the disputed facts are incon-
sistent with the known facts as they may have been fully
established by the evidence, then such disputed facts are
not facts at all, and do not exist. If a statement seems
improbable you may imagine whether the author of the
statement had a motive for making it; you may compare it
with the known facts, and if it is so far inconsistent with
the known facts that both cannot exist you should reject it,
but if it may exist together with the known facts, though
it seems impossible and the author may have had an im-
proper motive, you may, nevertheless, well hesitate to reject
it, if it be at all favorable to the prisoner, because if upon
the whole evidence you have a reasonable doubt concerning
the guilt of the accused, you will acquit. The defend-
ant could not have been at O'Neill and at Hastings at the
same time.· The witnesses who dispute each other con-
cerning this matter have some of them purposely testified
falsely or they are mistaken. You should inquire what
opportunity the witness for the prosecution had of becom-
ing acquainted with the defendant while he was at O'Neill,
if he was there, and whether they did become acquainted

Elliott v. State.

with him. This you will do with a view to ascertain whether they are mistaken as to the identity of the prisoner. You should also inquire, what, if any, motive these wit-nesses have for testifying against the accused, and the same line of inquiries which you direct toward the witnesses for the prosecution you should apply to the witnesses for the defense, and you will consider all the evidence in the case carefully and regardless of the consequence, and if you have a reasonable doubt concerning the guilt of the accused you will acquit. If the defendant has given untruthfull accounts of his whereabouts, and his occupation at various times other than in the month of May 1887, you may consider that fact, but remember that he is on trial for stealing horses, and for receiving stolen horses, and not for lying, and untruthful statements of the kind above speci-fied, if he has made any, go to affect his credibility as a witness, and are good for nothing else."

It will be observed that the second instruction states no rule by which the defendant's guilt is to be established,— "You should be satisfied of the truth of all the material allegations contained in the particular count," etc., without stating that they must be satisfied from the evidence and beyond a reasonable doubt. These are important consid-erations that no court should fail to impress on the minds of the jury. The fourth instruction contains very much which, however well meant, must have been prejudicial to the accused. There are other errors in the record which need not be noticed. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.