[Crim. No. 936. Department Two.—February 3, 1903.]

THE PEOPLE, Respondent, v. FRED DERBERT, Appellant.

CRIMINAL LAW—RAPE—INTERCOURSE WITH YOUNG FEMALE.—Under section 261 of the Penal Code, it is a felony to have sexual intercourse with a female under the age of sixteen years, regardless of the fact whether she consents or not, or of what may be her moral guilt.

ID.—MISCONDUCT OF DISTRICT ATTORNEY.—It was misconduct on the part of the district attorney to persist, against a ruling of the court, in asking improper questions so as to leave the impression on the minds of the jurors that the defendant had committed other crimes, and had changed his name. Such matters were not material to the issue being tried, and the district attorney should not have asked the improper questions, even if no objection had been made to them. It is his duty to aid the court in giving a fair trial to the defendant, on legal evidence alone.

APPEAL from a judgment of the Superior Court of Sonoma County. Albert G. Burnett, Judge.

The facts are stated in the opinion.

Ross Campbell, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr.. Deputy Attorney-General, for Respondent.

COOPER, C.—The defendant was charged with the crime of rape, in having sexual intercourse with a female under the age of sixteen years. He was found guilty as charged, and

sentenced to the state prison for thirty years. It appears from the testimony that the girl was about twelve years of age, but was large, thoroughly developed in her sexual organs, and as mature as the ordinary woman in the prime of life. The defendant had, with her consent, had sexual intercourse with her on several occasions. It does not appear that he seduced her, or that he used any force or undue influence to accomplish the act. At common law it was not a crime to have sexual intercourse with a female over the age of ten years with her consent. (1 Hale's Pleas of the Crown, 630.)

It was enacted by 18 Eliz., chap. 7, sec. 4: "That if any person shall unlawfully and carnally know and abuse any woman-child under the age of ten years, every such unlawful and carnal knowledge shall be a felony, and the offender thereof, being duly convicted, shall suffer as a felon without allowance of clergy."

The common law, founded upon the experience of ages, has been changed by statutes to some extent in England and in most of the states. It was said by Lord Macaulay in History of England (vol. 1, chap. 2), in speaking of the rigid laws of the Puritans during the times of Cromwell: "Against the lighter vices, the ruling faction waged war with a zeal little tempered by humanity or common sense. . . . The illicit intercourse of the sexes, even where neither violence nor seduction was imputed, where no public scandal was given, where no conjugal right was violated, was made a misdemeanor."

In Bishop's New Criminal Law (vol. 2, sec. 1132) it is said: "Though we have almost no direct decision to guide us, yet by established principles the common law of this country makes the unlawful carnal knowledge of a girl who consents, while between ten and twelve years old, indictable as a misdemeanor; below ten indictable probably as a felony; if not, then indictable as a misdemeanor."

Our Penal Code (sec. 261) has made it a felony to have sexual intercourse with a female under the age of sixteen years, regardless of the fact as to whether she consents or not; and this court has upheld the statute. (*People* v. *Vann,* 129 Cal. 118, and cases cited.) No matter what views the courts may entertain as to the policy of the statute, it is their duty to uphold it. (*People* v. *Curiale,* 137

Cal. 534.)   Under the statute the girl may be the older and more aggressive of the two, and the real seducer, if either may be said to be such.   She may be a common prostitute and seduce a boy of fifteen, and yet in such case the boy is guilty of a felony, while to her the law awards no punishment.   The courts in such case can only look carefully to the record to see that no prejudicial error has occurred.   In a case like this, where the offense was not such at common law, where in many jurisdictions it would at most be only a misdemeanor, and where the defendant was sentenced for a period beyond his expectancy of life, it seems to us that the court should look with the utmost care to every legal question raised that might have tended to injure the defendant during the trial.

It is claimed that the persistent conduct of the district attorney in asking improper questions during the trial, and making improper insinuations, was such error that the case should be reversed, and with this contention we agree.

Joseph Bauer, the father of the prosecutrix, was called as a witness for the people.   He testified to having signed the complaint in the justice court.   He was then asked by the district attorney the following question:—

"Q. Do you know where the defendant was at that time?

"A. He was in the jug.

"*Mr. Campbell.*—We object to that.

"*The Court.*—I think that is objectionable.

"*Mr. Berry.*—We want to show that he did not come into the justice court and swear to that complaint on information and belief.   For that purpose we want to show that this defendant was in jail at that time on another charge.

"*Mr. Campbell.*—We take an exception to the district attorney's remarks.

"*The Court.*—The jury will disregard that statement."

The court, it will be observed, correctly held that the district attorney could not prove that defendant was in jail on a charge of a different crime.   It also correctly told the jury to disregard the statement of the district attorney. But immediately afterwards the district attorney asked the following question:—

"Q.   What was the defendant arrested for at the time you were in the justice court?

"A.   He drove me out of the house."

The court again promptly sustained an objection to the question. The district attorney, notwithstanding the two rulings of the court, then said, in the hearing of the jury:—

"If your honor please, it has been shown that he was arrested, and we wish to show that he was arrested on another charge."

The defendant's counsel again took exception to the remarks of the district attorney, but the court does not appear to have made any reply.

The defendant was a witness in his own behalf, and testified that the father of the prosecutrix slept in the same bed with her at one time about two months before defendant was arrested. In cross-examination, the district attorney asked defendant the following questions:—

"Q. You say you were arrested. What were you arrested for?"

"Q. Mr. Derbert, or Mr. Rauch, is that true that during the last few months that you have been upon that place that you have terrorized not only Bauer, but all of those children?"

"Q. Is it not true that you told the prosecutrix in this case that you had had trouble several times and that you had changed your name four times?"

The court promptly sustained objections to all these questions, but that did not cure the error. It clearly appears that the object of the district attorney was to leave the impression upon the mind of the jury that defendant had committed other crimes, and that he had changed his name. His questions were directly in face of the rulings of the court, and certainly, with the knowledge that the court would not permit them to be answered. The object was to ask the questions and not to get the answers. The defendant was being tried upon a charge concerning which public passion and prejudice usually usurps the place of reason and evidence. He was certainly entitled to be tried for the crime charged in the information, and for no other or different crime. That he had been in trouble before, if true, as intimated to the jury, was not material. That he had changed his name four times, if true, as intimated to the jury, was not material to the issue being tried. That he had been before arrested on some other charge, if true, was not material, nor should it

have been intimated to the jury that such was the case. The reasons set forth fully by Mr. Justice McFarland in *People* v. *Wells,* 100 Cal. 459, apply here. It was there said:—

"It would be an impeachment of the legal learning of the counsel for the people to intimate that he did not know the question to be improper and wholly unjustifiable. Its only purpose, therefore, was to get before the jury a statement, in the guise of a question, that would prejudice them against appellant. If counsel had no reason to believe the truth of the matter insinuated by the question, then the artifice was most flagrant; but if he had any reason to believe in its truth, still he knew that it was a matter which the jury had no right to consider. The prosecuting attorney may well be assumed to be a man of fair standing before the jury; and they may well have thought that he would not have asked the question unless he could have proved what it intimated if he had been allowed to do so. . . . The wrong and the harm was in the asking of the question. . . . It is too much the habit of prosecuting officers to assume beforehand that a defendant is guilty, and then expect to have the established rules of evidence twisted, and all the features of a fair trial distorted, in order to secure a conviction. If a defendant cannot be fairly convicted, he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent."

The same views have been often expressed by this court. (*People* v. *Devine,* 93 Cal. 231; *People* v. *Lee Chuck,* 78 Cal. 327; *People* v. *Bowers,* 79 Cal. 415; *People* v. *Ah Len,* 92 Cal. 282.[1])

In the late case of *People* v. *Valliere,* 127 Cal. 66, it was held error for the district attorney, in his argument to the jury, to refer to a fact as true which had been ruled out as improper. In the opinion it is said:—

"In my opinion, the examination was inexcusable, and the statements contained in the closing address were an outrage upon justice, which ought not to be allowed to pass. The court promptly rebuked the attorney, but that did not cure the injury. Rebukes do not seem to have any effect upon prosecuting officers, and probably as little upon juries. The

[1] 27 Am. St. Rep. 103.

only way to secure fair trials is to set verdicts so procured aside.''

The above-cited cases follow the rule in other jurisdictions. (*Gale* v. *People,* 26 Mich. 161; *Leahy* v. *State,* 31 Neb. 566; *Turner* v. *Henniker,* 41 N. H. 317; *State* v. *Trott,* 36 Mo. App. 29.)

Nor is the case of *People* v. *Molina,* 126 Cal. 506, in conflict with the rule herein stated. In that case it was held that the remarks of the district attorney during his argument to the jury were not such as to justify a reversal. In the opinion, in speaking of the remarks, it is said: ''There is no statement of any fact pertinent to the issue not in evidence. There is no charge against the character of the defendant or his good name. There is no charge that he has been guilty of any offense or offenses other than charged in the information.''

In this case the district attorney was a sworn officer of the law, with a duty to perform under his oath of office. He should have been careful not to ask any improper questions, even if no objection had been made to them. He should have looked not only to the vindication of the law, but also to the rights of defendant. He should have aided the court in giving the defendant a fair trial upon legal evidence, and that alone. Then, let the consequences fall where they may, his duty would have been performed.

It follows that the judgment should be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed. McFarland, J., Lorigan, J., Henshaw, J.