## STATE v. PAUL FOURNIER.[1]

July 16, 1909.

Nos. 16,070—(21).

**Evidence — Admission of Another Crime.**

To permit a witness to testify to a conversation with the defendant, in which defendant stated that he had committed a crime in no way connected with the one for which he is on trial, is reversible error.

**Conduct of County Attorney — New Trial.**

The persistent asking by the county attorney of incompetent and improper questions with reference to matters which are of a nature to create prejudice in the minds of the jurors and prevent the defendant from having a fair trial is such improper conduct as to require the granting of a new trial.

Defendant was indicted in the district court for Beltrami county for the crime of murder in the first degree. The case was tried before Spooner, J., and a jury which found defendant guilty as charged in the indictment. From an order denying defendant's motion for a new trial, he appealed. Reversed and new trial ordered.

*Charles W. Scrutchin,* for appellant.

[1] Reported in 122 N. W. 329.

*George T. Simpson,* Attorney General, and *C. Louis Weeks,* Special Attorney, for the State.

ELLIOTT, J.

The appellant, Paul Fournier, was indicted by the grand jury of Beltrami county, charged with the murder of N. O. Dahl. He was convicted of murder in the first degree, and sentenced to life imprisonment. From an order denying a motion for a new trial, the defendant appealed to this court.

As we have reached the conclusion that a new trial must be granted, it is not advisable to discuss the evidence, or necessary to consider many of the questions raised, as they will doubtless be eliminated upon the second trial. Consideration of the rulings made by the trial court in the reception of evidence and the course of conduct pursued by the county attorney in persisting in asking incompetent and prejudicial questions should be premised by the statement that this record does not show conclusively that the defendant was guilty of the crime charged.

It appears that an old man named N. O. Dahl and his daughter, who were living on a claim in the northern woods, were murdered and their bodies concealed, so that they were not found for nearly three months. Fournier and another man were arrested, charged with the crime, and convicted. Fournier's case only is now before the court. The evidence (except as to an alleged confession or admission by Fournier, which was testified to by his brother) was entirely circumstantial. Without this admission, the remaining evidence would have been totally inadequate to sustain a conviction. The defendant denied having made the admission, and the credibility of the witnesses was a vital question. This being true, and the issue being of life or death, the defendant was entitled to be tried according to the established rules of evidence, and not to have the jury prejudiced by testimony relating to other alleged crimes and misdoings on his part.

1. A witness by the name of Rood testified that after the disappearance of the Dahls he visited their cabin and found that a mirror had been turned to the wall. Upon this slender foundation a witness,

Florence Melquist, was permitted to testify, over defendant's objection, as follows:

"Q. During the time that you were at Paul Fournier's, did you ever hear him say anything about turning looking glasses to the wall? A. I did.  *  *  *  Q. What did he say?  *  *  *  A. Well, he said that he went to rob a warehouse—I don't know where it was, but it was a warehouse that he went to rob—and they turned the looking glass towards the wall, and they put the light in the eyes, the fellow's eyes, the watchman who laid in the camp. He gave reasons for this. I don't remember. I know he told the story more than once—held the gun on the man while they were taking the things they wanted. Q. Turned the looking glass toward the wall while doing this? A. Yes, sir."

This evidence was clearly inadmissible. State v. Yates, 99 Minn. 461, 109 N. W. 1070; People v. Klise, (Mich.) 120 N. W. 989. But in view of the fact that the defendant took the stand and subsequently on cross-examination admitted that he had been connected with the robbing of a warehouse, it is possible that the error in receiving the evidence above quoted would not itself justify a reversal.

2. Error is assigned upon the conduct of the county attorney in persistently asking improper questions. The defendant being on the stand and having previously testified that he had never been married, the record discloses the following proceedings:

"Q. Where are your children now? A. I don't know as I have any children. Q. You don't know as you have any? A. I don't. Q. Where is your boy now? A. I don't know as I have a boy.  *  *  *  I don't know whether he is my boy or not. Q. You called him your son? A. I did call him my son. I don't know whether he is my boy or not, my son or not. He goes by the name of John Howard. Q. Who was his mother? Mr. Scrutchin: Objected to as incompetent, irrelevant, and immaterial.

"The Court: What is the purpose of this? Mr. Funkley: I want to show that he called him his own son, and always recognized him as his son. The Court: Is that a material feature in this case at all?

"Mr. Martin: I want to say, your Honor, a man may call many boys his son. That don't make any difference. It is a very common expression.

"The Court: I do not see how it is material here. You cannot impeach, except upon material matters. Is that material? Mr. Funkley: It goes to the credibility of his testimony.

"Q. Was this son of partly Indian blood? Mr. Scrutchin: Objected to as incompetent, irrelevant, and immaterial.

"The Court: Will you tell me how it will throw any light upon this case at all? Mr. Funkley: It certainly will go to the credibility of his testimony. He says he wasn't, when he actually was married and had children. The Court: I do not see how it is material.

"Q. Did you know George Barclay? A. Yes, sir. Q. Where? A. Pine River. Q. What became of him? A. He got shot. Q. How? Shot through the window, wasn't he? A. Yes, sir. Q. Did you do it? A. No, sir. Q. Do you recollect camping on Leech Lake sometime after Barclay was shot, and when your squaw said that if you didn't give her money she was going to tell who killed Barclay?

"Mr. Scrutchin: Objected to as incompetent, irrelevant, and immaterial, not proper cross-examination, and assuming a fact that has not been proven. The Court: Objection sustained.

"Q. Didn't you then give her money? (Same objection and ruling as last above.) Q. And wasn't she the next morning found dead, with a knife blade sticking in her side? (Same objection and ruling as last above.) Q. Who was with you in this hold-up on the Big Fork river? A. Well, it was no hold-up that I could see. We walked into the warehouse. We didn't hold up anybody. Q. Didn't you have any gun with you? A. Yes. Q. And didn't you aim the gun at the man? A. No, sir."

We do not intend to limit or restrict the rule with reference to proper cross-examination which was applied in State v. Quirk, 101 Minn. 334, 335, 112 N. W. 409; but the limit is clearly reached and passed when questions are asked manifestly for the purpose of creating prejudice in the minds of the jurors, or the examination is carried on in such a manner or to such an extent as to become oppressive, and is not warranted by anything in the case. Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372; Buel v. State, 104 Wis. 132, 80 N. W. 78; Elliott v. State, 34 Neb. 48, 51 N. W. 315. For the

purpose of affecting credibility, the statutes authorize the state to show that a witness has been previously convicted of a crime; but the examination must be confined to the fact of conviction. The court ruled properly upon these particular questions; but the county attorney should have been prevented from continuing such a course of examination, as the result would inevitably prejudice the jurors against the defendant.

3. Error is also assigned upon the instructions of the court in reference to the weight the jury was entitled to give the evidence relating to the admission by the defendant that he had committed the crime. The fact of the admission rested on the testimony of one witness. It was denied by the defendant, and the court should not have singled out this particular item of evidence and placed unusual stress upon it. The defendant was entitled to have all the evidence considered, and the credibility of witnesses established according to well-known rules.

The judgment and order appealed from are reversed, and in accordance with the statute a new trial is directed. The case is remanded to the district court to that end, and the warden of the Minnesota State Prison is hereby directed to deliver the said defendant to the sheriff of Beltrami county, to be taken to Beltrami county for such new trial.

Reversed and new trial ordered.