STATE v. JEROME (ALSO KNOWN AS JERRY) SILVERS.[1]

January 6, 1950.

No. 34,957.

---

[1]Reported in 40 N. W. (2d) 630.

*Kleve Flakne, C. H. Bentley,* and *John Ott,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, and *Milton I. Holst,* County Attorney, for the State.

LORING, CHIEF JUSTICE.

This case comes to the writer on reassignment.[2]

Defendant was convicted of assault in the second degree. His motion for a new trial was denied, and he appeals to this court.

As we view the record, a careful examination of it requires a reversal because of the asking of prejudicial questions by the prosecution. Complainant had invited defendant to his house to confer about defendant's conduct toward complainant's wife. He admitted that during the course of this conference he used language toward defendant. calculated to provoke the breach of the peace which, he says, resulted in his broken nose. The two men were about the same size, and each considered himself skillful with his fists. Complainant proved to be the better at dirty fighting. Whether or not the county attorney's zeal may have clouded his judgment, he fortified himself with a divorce complaint which alleged assaults by defendant upon his wife, expecting, no doubt, that circumstances might develop in the course of the trial which might make the complaint admissible.

Much extraneous matter unnecessarily encumbers the record, but the boiled-down, relevant facts are very simple. Defendant and the complaining witness were next-door neighbors. Their wives were friendly. The two couples frequently patronized taverns and restaurants together. Friction arose between the two men in regard to

---

[2]Supreme Court Rule XIII (222 Minn. xxxvii):

"Whenever any member of the court is not present at the oral argument of a case, such case shall be deemed submitted to such member of the court on the record and briefs therein and when during the consideration of a case there is a change in the personnel of the court the case shall be deemed submitted to the new member or members on the record and briefs."

complainant's wife. On the occasion of the alleged assault, complainant called defendant into his house. Defendant went in and sat down in the kitchen. Complainant told defendant that there were things they had to get "straightened out." It developed that defendant was at first charged with "molesting" complainant's wife, but on the trial she admitted that in the incident complained of he had not touched or even spoken to her. Complaint against him was that he had whistled at her on an occasion a short time before the alleged assault when she was burning rubbish. Defendant then proposed to "start from the beginning" and said some things reflecting upon the conduct of complainant's wife toward himself. In response, complainant used abusive language toward defendant. There is some evidence that the abusive words were repeated two or three times. To a man of defendant's nationality, the words used were calculated to provoke a breach of the peace. Nevertheless, defendant asserts that he then refused to listen further and started for the door. Defendant and his wife contend that complainant struck at defendant as he was going toward the door and that complainant followed the attempted blow by reaching for, seizing, and twisting that part of defendant's person calculated to cause the most excruciating pain. This last is conceded. Complainant insists that, after he had used the abusive language toward defendant, defendant came at him and struck first. Be that as it may, defendant got in an uppercut with his left fist which broke complainant's nose and caused him to release his "foul tackle." They separated. Complaint was made the next day, and the county attorney later filed an information charging assault in the second degree. Trial and conviction followed. Defendant was given an indeterminate sentence of up to five years.

On this appeal, misconduct is charged against the prosecuting attorney for asking questions which were calculated to give an impression to the jury that defendant was a wife beater as well as guilty of assault on the complaining witness.

On the question presented, we should bear in mind that it is the duty of the prosecuting attorney as well as the court to see that

the accused has a fair trial. State v. Stockton, 181 Minn. 566, 233 N. W. 307. The words of Mr. Justice Sutherland, speaking for the Supreme Court of the United States in Berger v. United States, 295 U. S. 78, 88, 55 S. Ct. 629, 633, 79 L. ed. 1314, 1321, are apt. He declared:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

Minn. Const. art. 1, §§ 6 and 7, guarantee a speedy and public trial by an impartial jury and due process in all criminal cases. State v. Shetsky, 229 Minn. 566, 40 N. W. (2d) 337. The fact that the accused takes the stand to testify does not put in issue his general character or his propensities. It opens up only the issue of credibility. State v. Nelson, 148 Minn. 285, 181 N. W. 850. As to that, prior convictions under state or federal law are admissible[3]; but, unless the accused offers evidence of good character, the state may not attack his character in respect to the trait involved in the crime alleged at bar. State v. Nelson, *supra;* see, 1 Wigmore, Evidence (3 ed.) § 57, p. 455. Also, the rule is well established that the cross-examiner who inquires into collateral matters to affect the witness's credibility is bound by the answers he gets. Murphy v. Backer, 67 Minn. 510, 70 N. W. 799; State v. Nelson, *supra;* John-

---

[3]But not violation of municipal ordinances. Carter v. Duluth Yellow Cab Co. 170 Minn. 250, 212 N. W. 413. Nor convictions for violation of traffic regulations which do not amount to felonies. See, M. S. A. 169.94.

son v. United States (7 Cir.) 215 F. 679, L. R. A. 1915A, 862; 6 Dunnell, Dig. & Supp. § 10348*d*. The state may not, in such a case, prove facts contradicting the answers. State v. Staley, 14 Minn. 75 (105); Campbell v. Aarstad, 124 Minn. 284, 144 N. W. 956; People v. Malkin, 250 N. Y. 185, 193, 164 N. E. 900, 903. With these principles in mind, we examine the record.

On his direct examination, no allusion was made to any circumstances which would justify cross-examination of defendant as to whether he had assaulted or beaten his wife. Nevertheless, on cross-examination the county attorney asked if he had not done so.[4] Obviously, he expected a negative answer,[5] which he got, because he then endeavored to introduce in evidence the complaint in the divorce action, in which it was alleged that defendant had repeatedly struck his wife. At least, the jury might readily so infer from the fact that it was offered. Objection to the introduction of this complaint was sustained, whereupon the county attorney announced that it would be reoffered in connection with other testimony. Obviously, that would be the wife's cross-examination, where it was subsequently offered to impeach her.[6] The county attorney is too good a lawyer not to be fully cognizant of the inadmissibility of the complaint, either in the cross-examination of defendant himself or of his wife. His excuse as to the wife was that "She has let herself open to that." But again let us look at the record.

In the direct examination of the wife, of course no inquiry was made by defendant as to any assault that defendant may have made

[4]"Q. And these wrongs you refer to weren't any wrongs for any assaults upon her or beating or anything of that kind?
"A. That I have never done.
"Q. You stated that you have never assaulted your wife?
"A. No, sir.
"Q. Never struck her or beat her?
"A. No."

[5]This being a collateral matter, the answer was binding on him, and he might not later be permitted to prove otherwise.

[6]The county attorney tried to impeach defendant's wife by again offering the complaint in evidence, although not in the presence of the jury. Objection to it was sustained.

upon her, nor was any question asked her which would justify cross-examination with reference to assaults by defendant on people other than the one for which he was being tried. State v. Haney, 219 Minn. 518, 18 N. W. (2d) 315; State v. Glazer, 176 Minn. 442, 223 N. W. 769. On her cross-examination, however, the county attorney in his zeal adroitly led up to a situation which he obviously expected would put the case in a posture where he could get the divorce complaint in evidence. He first inquired of the witness whether defendant did not have a violent temper. When she denied that, he asked if he had not assaulted "other people." Before objection could be made, she answered that she knew he had, "yes"; whereupon, defendant's counsel asked that the answer be stricken so that he might ask a question obviously for the purpose of destroying any foundation for the answer and to show that the question was objectionable. The motion was granted. Defendant's counsel asked the witness if she had ever been present when her husband had struck anyone. To this she answered, "Never." Obviously, this question was asked for the purpose of destroying the foundation for the answer. The answer showed that the wife had no direct knowledge of such assaults, and it left her statement based solely on hearsay. The court then sustained defendant's motion to strike the answer, and this should have concluded further inquiry on the subject by the county attorney. The state contends that defendant opened up the subject. However, the record shows clearly that it was the state that introduced the line of inquiry.[7] The prosecuting attorney immediately saw what he thought was his opportunity, not only to get the complaint in evidence, but to inject a further ques-

---

[7] 3 Wigmore, Evidence (3 ed.) § 1020, p. 693, states:

"It may be added that there is sometimes found an erroneous notion (precisely similar to that described already as obtaining sometimes for Contradiction by extrinsic testimony) that nothing said on the direct examination can be collateral and therefore a *Self-Contradiction of anything said on the direct examination* is admissible. The history of this misunderstanding, and the reason why it is erroneous, have already been explained (*ante,* § 1007). The error has been frequently repudiated by other Courts."

tion, which, by its innuendo, would prejudice the jury against defendant. This is what occurred:

"Q. It is a fact that he is a man of violent temper?

"A. I wouldn't say that, no.

"Q. That he becomes very very angry and loses his temper?

"A. No.

"Q. You know, as a matter of fact, that he has assaulted other people? You know that, don't you?

"A. I know that, yes.

"Mr. Flakne: Just a minute. I move the answer be stricken on the ground it is calling for a conclusion, and I would like to ask a question before she answers that question because I think I can develop that it is strictly a conclusion.

"The Court: You may ask.

"By Mr. Flakne:

"Q. Mrs. Silver, have you ever been present when your husband has struck anyone?

"A. Never.

"Mr. Flakne: Then I move to strike the answer, and it be stricken, expunged from the record, and I object to it as a conclusion of the witness.

"The Court: Sustained.

"By Mr. Holst [continuing his cross-examination]:

"Q. You say you never have been present when your husband has struck anyone?

"A. That's right.

"Q. Mrs. Silver, as a matter of fact, your husband has struck you?

"A. No.

"Mr. Flakne: Just a minute. That is incompetent, irrelevant and immaterial.

"Mr. Holst: She has let herself open to that.

"Mr. Flakne: It is a privileged communication.

"Mr. Holst: It is not.

"Mr. Flakne: Do you mean your wife is not a privileged communication? And I know what Counsel is going to do here and it is strictly an attempt on his part to prejudice the jury.

"The Court: Sustained.

"Mr. Holst: Wait a minute, Your Honor, I would like to argue that point. Here is the point.

"The Court: Wait a minute. The jury will retire, please."

It is the asking of the question, "Mrs. Silver, as a matter of fact, your husband has struck you?" which followed this persistent effort to get in prejudicial irrelevant evidence that is the basis of the charge of misconduct. The jury had heard the previous prejudicial questions and had seen the county attorney offer the complaint in evidence, and, although that offer had been rejected by the court, they could have had no trouble in connecting with the offer the attempt to bring out from the wife the same irrelevant and prejudicial matter. Cf. People v. Anthony, 185 Cal. 152, 196 P. 47. In fact, the prosecuting attorney had promised to *reoffer* the complaint in connection with other testimony. Although the court sustained defendant's objection to the question, it was prejudicial misconduct to ask it, since it was calculated to arouse prejudice in the minds of the jury against defendant. Obviously, nothing would have prejudiced the jury more effectively against defendant than to give it the impression that he was a wife beater. Jurors, to their credit, are likely to regard a blow struck a woman as wholly inexcusable and discreditable to the offender—doubly so if the woman is offender's wife. Since the prosecuting attorney was a public official, the jury naturally thought he must have evidence to support his innuendoes.

The authorities support the asking of such prejudicial questions as ground for new trial.

In State v. Rediker, 214 Minn. 470, 482, 8 N. W. (2d) 527, 533, defendant was charged with the murder of his second wife. He was asked on cross-examination:

" 'Q. Finally, you also beat your first wife?' Defendant's objection to the question was sustained, and on his motion it was stricken

from the record. The court stated that 'it should be disregarded.' Both questions were improper. The one pertaining to defendant's treatment of his former wife was highly so *and ordinarily would of itself require the granting of a new trial upon the ground that it was a 'foul' blow."* (Italics supplied.)

In State v. Fournier, 108 Minn. 402, 405, 122 N. W. 329, 330, we said:

"* * * but the limit [of cross-examination] is clearly reached and passed when questions are asked manifestly for the purpose of creating prejudice in the minds of the jurors, or the examination is carried on in such a manner or to such an extent as to become oppressive, and is not warranted by anything in the case. Malone v. Stephenson, 94 Minn. 222, 102 N. W. 372; Buel v. State, 104 Wis. 132, 80 N. W. 78; Elliott v. State, 34 Neb. 48, 51 N. W. 315. For the purpose of affecting credibility, the statutes authorize the state to show that a witness has been previously convicted of a crime; but the examination must be confined to the fact of conviction. The court ruled properly upon these particular questions; but the county attorney should have been prevented from continuing such a course of examination, as the result would inevitably prejudice the jurors against the defendant."

A majority of the courts adhere to the rule that where the prosecuting attorney persists in asking prejudicial questions there is reversible error, although objection thereto is sustained. People v. Wells, 100 Cal. 459, 34 P. 1078; see, Annotation, 109 A. L. R. 1089. "The wrong and the harm was in the asking of the question." Watson v. State, 7 Okl. Cr. 590, 599, 124 P. 1101, 1104; State v. Shannon, 95 Mont. 280, 26 P. (2d) 360; People v. Un Dong, 106 Cal. 83, 39 P. 12; People v. Derbert, 138 Cal. 467, 71 P. 564. In People v. Mullings, 83 Cal. 138, 23 P. 229, 17 A. S. R. 223, the prosecuting attorney asked defendant questions as to conversations with his wife. Objections were overruled, but the claim was made that because the answers were mostly in the negative the questions were not prejudicial. The court stated (83 Cal. 145, 23 P. 231):

"* * * It is quite evident that the *questions,* and not the answers, were what the prosecution thought important. The purpose of the questions clearly was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based. To say that such a course would not be prejudicial to defendant is to ignore human experience and the dictates of common sense. The questions themselves were *incompetent;* and after one or two of them had been asked showing the purpose of the prosecution, counsel should not have been allowed to ask others of like character."

In People v. Cords, 232 Mich. 620, 206 N. W. 541, the prejudicial questions were more numerous, but once the jury had heard the initial damaging question the number of times it was repeated would only increase the prejudice which had already been engendered. In that case, defendant was charged with statutory rape. On cross-examination, the prosecuting attorney questioned defendant with regard to a bill of divorce in which his first wife had accused him of running around with lewd and immoral women. When defendant denied that he had had an attorney in the divorce action, the prosecutor offered the file in that case in order to contradict him. An objection was sustained, but the court said (232 Mich. 623, 206 N. W. 542):

"The defendant had a right to a trial in accordance with the rules of evidence, unhampered by *a circumvention thereof under statements of improper offers, followed by endeavors to get the excluded matters before the jury,* and *successful to a point beyond possible elimination by instructions to the jury.* We think the virus of such prejudicial matter inoculated and the prejudice thereof ran its course *regardless of remedies applied."* (Italics supplied.)

In the instant case, the prosecuting attorney must have known that evidence of assaults on defendant's wife was irrelevant to the issue being tried and consequently inadmissible, yet he persisted in attempting to inject the highly prejudicial matter into the

case. His offer of the divorce complaint in defendant's cross-examination was rejected, but the jury could readily infer, from the question and the offer, that the prosecuting attorney had proof of his insinuation. Not content with having the complaint excluded on defendant's cross-examination, he again alluded to these assaults on cross-examination of defendant's wife in a further attempt to get the complaint before the jury. The entire subject, from the assaults to the complaint, was inadmissible. Nevertheless, he continued to pursue the matter of independent offenses, even after objections to the witness's answers had been sustained.

Where the prosecuting attorney asks incompetent or irrelevant questions calculated to prejudice defendant in the eyes of the jury, his conduct constitutes reversible error, even though objections thereto are sustained. People v. Grider, 13 Cal. App. 703, 110 P. 586; Dredd v. State, 26 Ala. App. 594, 164 So. 309; People v. Gordon, 344 Ill. 422, 176 N. E. 722. Good faith of the prosecuting attorney in asking improper questions is wholly irrelevant to the problem. Defendant's rights are as much jeopardized by a question asked in good faith as by one asked with a vicious purpose. The purpose of the questions as to assaults on defendant's wife was to convince the jury that defendant was a wife beater. Since their effect was to prejudice defendant in his constitutional right to a fair trial, he is entitled to a new trial.

The order denying a new trial is reversed and the case remanded for a new trial.