JOHN HANSKETT v. EARL H. BROUGHTON AND ANOTHER.[1]

November 9, 1923.

No. 23,521.

**Prejudicial to admit evidence of intoxication.**

1. In an automobile collision case, defendant's negligence being admitted, and there being no issue as to his credibility, it was prejudicial error to admit proof tending to show that he was intoxicated at the time of the collision.

**New trial because excessive verdict affected by misconduct of prevailing party.**

2. Where it appears that a seemingly excessive verdict probably was contributed to by misconduct of the prevailing party, this court will order a new trial in the interest of orderly administration of justice.

Action in the district court for Hennepin county to recover $7,500. The case was tried before Nye, J., and a jury which returned a verdict for $2,300. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*Hoke, Krause & Faegre* and *L. N. Foster*, for appellant.

*Burnett Wolfson, William A. Tautges* and *Tautges & Wilder*, for respondent.

STONE, J.

Action for personal injuries, arising out of the usual street intersection automobile collision. After verdict for plaintiff and denial of the motion for judgment notwithstanding or a new trial, defendant appeals.

Defendant Broughton is an employe of defendant Fullerton Krueger Lumber Company, and, as such, in the course of his employment, was driving an automobile belonging to it, so that the latter is responsible for the negligence of Broughton. Plaintiff was

[1]Reported in 195 N. W. 794.

driving his own machine at the time of the collision between it and the one driven by Broughton.

There was in the answer a denial of negligence on the part of Broughton, but, before plaintiff opened his case to the jury, that denial was withdrawn and the negligence of Broughton admitted. On the part of plaintiff it is argued that the admission was qualified and to the effect only that, at the time of the collision, plaintiff had the right of way, which right was disregarded by Broughton, who will be referred to as defendant. The admission was perhaps so qualified, but, as the record shows, the case proceeded upon the theory, adopted by court and counsel, that after such admission there was no issue with respect to defendant's negligence. That is, notwithstanding the somewhat grudging character of the admission, it was taken by all concerned as unconditional, finally resolving the issue of defendant's negligence against him.

Notwithstanding that state of the case, plaintiff's counsel in his opening statement promised to "show that Mr. Broughton was to some extent under the influence of intoxicating liquor." Prompt objection was made, but the court ruled that, inasmuch as the defense of contributory negligence "seems to stand in the pleadings," he would not at that time instruct the jury to disregard the statement objected to.

The first witness called by plaintiff was defendant and one obvious purpose was to prejudice the jury by proof of defendant's alleged intoxication. The evidence was objected to; part of it was admitted, and part excluded. The court ruled that it was not in order, and said to counsel for plaintiff that such evidence would be permitted if, on the part of defendant, there was any showing of plaintiff's contributory negligence.

Notwithstanding that ruling, plaintiff's counsel, not willing to abide by the rules of orderly procedure, again, as a part of his initial proof, came back to the subject of defendant's alleged intoxication, and, over defendant's objection, his witness was permitted to answer that after the collision defendant "appeared to be drunk" and that his breath had the odor characteristic of that condition.

The introduction of that proof at the time and in the manner it was introduced, was prejudicial error. There is such a general and righteously angry attitude of the public against drunken automobilists that the prejudice must be presumed. In consequence the error requires a reversal.

Where a reversal is necessitated by such conduct on the part of counsel for the prevailing party, we are not much disposed to search the record for circumstances calculated to cure the error. We have done so, however, and find none. The attempt to prove contributory negligence was not of such a nature as to lay a foundation for proof of defendant's intoxication. That evidence, scant at best, had to do with plaintiff's doings and condition, instead of those of defendant. Neither was there any issue as to the credibility of defendant which would have made material evidence of his then condition as to sobriety or the lack of it.

There is another reason why there must be a reversal. The amount of the verdict is large. An examination of the record convinces us that it is too large, but, confirmed as it is by the learned trial judge, we would not direct a new trial for excessive damages were it not for our conviction that the size of the verdict may be, and probably is, explained by the grossly unfair tactics of counsel for plaintiff. The proof of defendant's intoxication, improper as it was, is the least of his offending.

There was the usual defense by an insurance company, and the usual array of witnesses, expert and otherwise. There were doctors on both sides. In his summing up, plaintiff's counsel stressed repeatedly the presence of the insurance company's interest—by itself a wholly improper proceeding.

It is proper, the evidence warranting, to refer to the partizan habit of witnesses, particularly experts, who always are on the same side of the issue of personal injury. But it is not proper to cast aside both dignity and decency, as counsel for plaintiff did in this case, and descend into the slough of plain vituperation. Witness these excerpts from his argument: "But Hoke (counsel for defendant) admitted negligence here because he hoped by so doing to cover up and keep away from the jury certain facts with reference

to Broughton's conduct, the fact that he had been taking intoxicating liquor. You know from the manner in which this case was tried that Mr. Hoke did everything in his power to keep from this jury the fact that Broughton had been drinking intoxicating liquor."

Paying his respects to certain witnesses for defendant, the attorney continued: "They say he is dishonest. Why? Because he was hurt and because the Travelers Insurance Company may have to pay him damages. And if you follow these cases as I have, you will find that defendants and insurance companies and railroad companies are generally claiming that a man who has been injured * * * is dishonest and untruthful. The Travelers Insurance Company is vitally interested in having you believe that Hanskett is dishonest and untruthful because they are trying to save their pocketbook here. * * * The sole purpose of an insurance company is to get out of it just as cheaply as they possibly can. * * * Everybody who has appeared in behalf of the plaintiff in this case is untruthful and dishonest. The Travelers Insurance Company and its lawyers say so."

Here there was an interruption and indignant denial by counsel on the other side followed by a characteristically mild and good-natured admonition from the court. Finally, counsel for plaintiff reached the summit of his offending in this manner: "Now he (a doctor testifying for defendant) did that for a money consideration. The way some of these doctors and so-called medical experts that appear for the railroad companies and insurance companies testify * * * is one of the reasons why the medical profession * * * is getting into a good deal of ill repute. · It has been said that there are three kinds of liars, ordinary liars, damn liars and medical experts for insurance companies and railroad companies."

Here counsel for defendant interposed, not with an objection or a request that the trial court keep the argument within proper limits, but with this comment: "How about the ambulance chasers?" And finally counsel for plaintiff again pointed his plea for a large verdict because defendant "had been drinking whiskey."

True it is that counsel for defendant did not set his adversary an example of spotless methods in advocacy—not by any means. But

in a situation such as this, and in the interests of orderly procedure, one wrong cannot excuse another.

We are dealing here with the record not of a trial but of a game, a play of wits attempting not the presentation of facts, but the framing of abuse and innuendo. It is another case where counsel have imposed upon the long suffering patience of the trial judge to such an intolerable degree that, though he stood it with apparent equanimity, we cannot. And in the instant case counsel may have been emboldened by the reputation for magnanimous good temper which the learned trial judge has so long and deservedly enjoyed.

By statute, section 122, G. S. 1913, as amended by chapter 297, p. 363, Laws 1921, this court is given power to make rules governing the conduct of attorneys in court. That power has not been exercised because the standards governing such conduct are so well recognized, and because they must be enforced in the main by trial judges. It might, therefore, be a somewhat futile thing to make such a set of rules, to codify the existing legal and ethical mandates on the subject. But we can make precedents which will tend to prevent counsel from committing, and trial judges from permitting, misconduct in trial advocacy.

Accordingly, all else aside, in the interest of the orderly administration of justice, there must be a new trial because of the misconduct of counsel which made the first trial no trial at all.

Order reversed.

## On Petition For Reargument.

On December 7, 1923, the following opinion was filed:

Per Curiam.

The respondent's petition for rehearing is denied, but it makes one criticism of the opinion which is well taken and we are grateful to counsel for calling attention to it. The point referred to is that the opinion seems to place the reversal in part squarely upon misconduct alone. Obviously, that is a proper interpretation, although not the one intended, of the concluding paragraph of the opinion. It does not say just what should have been said.

The fact is that the portion of the opinion dealing with misconduct is predicated solely upon our conclusion that the verdict seemed excessive and that its size may have been due to misconduct of counsel. That was the conclusion of the court and the precise ground upon which, so far as misconduct is concerned, the conclusion was reached. Were that not the case, the misconduct would not have been for consideration because, standing alone and independently of its being a contributing cause of a seemingly excessive verdict, it was not assigned as error. We considered it, as we were compelled to by the assignments of error, as a contributing cause of a verdict which, as to size, was not in our opinion supported by the evidence. Its seemingly excessive character, coupled with the conduct of counsel, made a combination which required a new trial, as the opinion states, in the interest of the proper administration of justice.