## STATE v. CHARLES BERNSTEIN.[1]

### March 11, 1921.

### No. 21,940.

**Duty of prosecutor.**

1. A prosecuting attorney is a public officer whose duties and obligations in the trial of a case are not simply those of an attorney in a civil action.

[1]Reported in 181 N. W. 947.

**Final argument to jury.**

    2. Much latitude is allowed him in making his final argument before the jury, but he may not inject into it extrinsic and prejudicial matters which have no basis in the evidence.

**New trial because of misconduct of counsel.**

    3. Whether a new trial for misconduct of counsel should be granted, is largely within the discretion of the trial court. The statement, as a fact within counsel's knowledge, or something which is not in the evidence, is wrong. If it is prejudicial in its tendency, it is the duty of the court, when requested, to direct the jury to disregard it, and a failure to do so may require a new trial notwithstanding a cautionary instruction given later by the trial court.

**Fair trial prevented by remarks of prosecutor.**

    4. The remarks of the prosecuting attorney set out in the opinion were improper and highly prejudicial to the substantial rights of the defendant, and were continued notwithstanding repeated objections by his counsel. The prejudice they created was not overcome by the instructions to the jury, and defendant did not have a fair trial. The proof of his guilt was not so clear and conclusive that it can be held that he was not prejudiced by the line of argument persisted in by the prosecuting attorney, and his motion for a new trial should have been granted.

Defendant and another were indicted by the grand jury of Hennepin county charged with the crime of robbery in the first degree. Defendant was tried separately in the district court for that county before Molyneaux, J., and a jury, and found guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Reversed.

*W. J. Donahower,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Floyd B. Olson,* County Attorney, for respondent.

Lees, C.

An indictment was returned against the defendant and one Connors, charging them with the crime of robbery. Defendant was tried separately and convicted. A motion for a new trial was made and denied and he appeals from the order denying his motion.

At about half past ten on the morning of October 9, 1918, three men

entered the First National Bank of Hopkins, and, at the point of re-
volvers, forced every one in the bank to go into the vault, where they were
locked in while the robbers took and escaped with the money of the bank.
To prove its case the state called Kriz, the cashier, Goodspeed, the assist-
ant cashier, Miss Olson, the bookkeeper, and Mrs. Johnson, a customer,
all of whom were in the bank at the time of the robbery. Goodspeed and
Mrs. Johnson identified defendant as one of the trio of robbers. The ef-
fect of Mrs. Johnson's identification was somewhat weakened by testimony
that, when taken to the county jail to identify defendant and Connors
after their arrest, she expressed the opinion that they were not the men
who had robbed the bank. Kriz and Miss Olson did not see the man iden-
tified as the defendant by Goodspeed and Mrs. Johnson. Mrs. Barry, a
witness for the state, testified that she was on the street not far from the
bank when the robbers came out, got into an automobile and drove away,
and that the first one to come was a dark man carrying a black bag, whom
she identified as defendant.

Defendant called as a witness one Svec, a grocer at Hopkins. He was
transacting business with Goodspeed when some one behind him said
"Hands up." Thinking it was a joke, he did not immediately pay atten-
tion to the command, and was struck on the back of his head. Turning
around, he faced a man pointing a pistol at him. This was the man whom
Goodspeed identified as the defendant. Svec testified that defendant was
not the man. He further testified that, while the trial was in progress, he
had observed the defendant closely on three different occasions and was
satisfied that he was not the man by whom he was held up at the bank.
Defendant's next witnesses were two St. Paul detectives, Crumley and
Dawson, who testified that, between 9 and 10 a. m., on the day of the rob-
bery, they saw the defendant and Connors seated in the Windsor hotel in
St. Paul, that later in the forenoon the robbery was reported to them
and they went back to the hotel and saw the two men still there. Their
testimony was corroborated to some extent by the hotel clerk. Defendant
did not take the stand in his own behalf. It appeared that he was in and
around St. Paul and Minneapolis until some time in February, 1919;
that thereafter he and Connors went to New York, where they were ar-
rested and brought back to Minneapolis charged with the robbery.

Defendant contends that the court erred in denying him a new trial
on each of three grounds: (1) That the evidence failed to establish his
guilt beyond a reasonable doubt; (2) misconduct of the county attorney

in conducting the cross-examination of defendant's witnesses; (3) misconduct of the county attorney in his address to the jury. The third contention alone requires attention, for our conclusion in respect to it results in a reversal of the order denying defendant a new trial.

In his address to the jury the assistant county attorney made a bitter attack on Crumley and Dawson. Among other things, he said:

"They saw Bernstein and Connors the day of the bank robbery, after the bank robbery, and that is the only basis of truth in their statement. * * * They saw them after * * * these men had driven from Hopkins in that automobile down to St. Paul and had gotten under cover, under the cover of protection of men like Crumley and Dawson. And I have no doubt that they welcomed them with outstretched arms."

"As you looked at the man Crumley, if you had seen him sitting in a court room among a band of men you knew were robbers, you would pick Jim Crumley as the biggest one of them all, as you looked at him as he sat there with his nasty look, testifying in this case."

"You are not going to be taken into camp by that story, gentlemen. These men, who are not satisfied * * * with protecting these criminals in Ramsey county, come over into your county, by God, to perjure them out of their just dues."

"I say to you, gentlemen of the jury, that I have a right, if a man's story is improbable, to say that he is lying. Now I might make a wishy-washy argument here and say he is mistaken, but that is not what I believe, gentlemen, that is not what is established, for I know, by God, this man Crumley sat there and told you a deliberate framed-up falsehood. * * * I say it now, and I would say it if I live to be a hundred years old."

"And now, gentlemen, I have shouted and stormed and all that, but I am telling you, gentlemen, really from the bottom of my heart these things about these detectives, because I knew, because I felt, not as an experienced prosecuting attorney because I have only been such since last May, not as an experienced criminal lawyer, because I have never been such, but because I claim to be a man of some, some small intelligence. And I think, gentlemen, as decent citizens of this county, you feel the

same way about the attempt of this St. Paul gang to come over here and alibi a couple of men, whom people from Hopkins, whom you will respect wherever you meet them, have pointed out as the men that robbed that bank.  *  *  *  I say to you, gentlemen of the jury, that if you follow the testimony of  *  *  *  the people from this little village whose bank was robbed  *  *  *  if you follow that testimony and disregard this crooked, perjured frame-up from St. Paul, then gentlemen, if you say these men are guilty,  *  *  *  your verdict is founded upon the testimony of decent, respectable, reputable, honorable people.   And when you find these men guilty  *  *  *  you will write a verdict on the records of this court that will be emblazoned  *  *  *  in the sky, so that these thieves, these robbers, these perjuring protecting detectives, when they see that, won't come into Hennepin county any more in an attempt to protect their denizens.  *  *  *  And after you have written that verdict of guilty upon the records of this court, I will tell you that we won't have any more perjurers coming over here from St. Paul, and I promise you, as one of the prosecuting attorneys of this county, that that perjury shall not go unpunished; that that testimony won't end here. *  *  *  I will promise you  *  *  *  that these men will not come over here and perjure themselves and go back and hunt cover in St. Paul without some consequences."

As these remarks were made, defendant's counsel repeatedly objected and requested the court to instruct the jury to disregard them.   On each occasion the trial court directed that an exception be noted. but did not require the prosecuting attorney to desist from that line of argument nor admonish the jury to disregard the remarks.   In concluding the charge to the jury, the court said:

"You are trying this case upon the evidence adduced here in court, the sworn evidence, and you are not trying it upon the remarks of counsel or anything that anybody says outside of the court house.   Insofar as the arguments of counsel are beneficial to you and have helped you in weighing the evidence, that is legitimate, but whenever counsel on either side undertakes to make statements of fact that are not in the record, disregard that, because it is not in the record, it is not sworn to, and if it has a bearing upon the case it should be sworn to and probably would be sworn to.   So any remarks of counsel are not evidence.   If their arguments are

148 M.—20.

justified by the evidence, well and good; if they are not, they are of little use to you."

In 3 Wharton, Crim. Proc. § 1490, we find the following statement:

"A prosecuting attorney is a sworn officer of the government, required not merely to execute justice but to preserve intact all the great sanctions of public law and liberty. No matter how guilty a defendant may in his own opinion be, he is bound to see that no conviction shall take place except in strict conformity to law."

In State v. Clark, 114 Minn. 342, 131 N. W. 369, the same thought was expressed in the following language:

"The duties and obligations of a prosecuting officer are not simply those of an attorney in a civil action; for behind him, and largely at his command, are all the forces of organized society. He has, by virtue of his office, if worthy of it, great influence with juries, and he should never forget that he is the representative of the sovereignty and justice of the state and that he must bear himself, in the discharge of his official duties, as a minister of justice and never as a partisan."

From this standard of conduct the prosecuting attorney departed in persistently following the objectionable line of argument above set out. This court has several times stated the rules by which prosecuting attorneys are to be governed in summing up before the jury. In substance they are as follows:

Much latitude is properly allowable and an unreasonably strict rule limiting discussion to the immediate points in evidence should not be established. State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Price, 135 Minn. 159, 160 N. W. 677.

But the prosecuting attorney is not justified in thrusting his personality into the case or stating as a fact anything which the evidence does not tend to prove. State v. Clark, supra.

He may draw deductions from the testimony and the appearance of the witnesses in court, and in so doing may express the conclusion which his mind has reached, but he must not inject into the argument extrinsic and prejudicial matters which have no basis in the evidence. State v. Wassing, 141 Minn. 106, 169 N. W. 485.

He is not bound to make his argument colorless, but may present forcibly the state's side of the case. State v. Clark, supra.

We find nothing in the record to justify the intemperate language persistently used by the prosecuting attorney in this case. He traveled far afield when he virtually testified that he knew that Crumley told the jury a deliberate falsehood and charged him and Dawson with protecting and welcoming bank robbers with outstretched arms, and with coming from Ramsey to Hennepin county to commit perjury to aid a criminal in escaping punishment justly due him. It was improper to make the threat that Crumley and Dawson should not go unpunished for their perjury nor hunt cover in St. Paul without consequence. If we were to sanction the making of such statements, there would be no limits within which attorneys would be confined in summing up before the jury. There could not well be a more extreme illustration of improper argument than we have here. Can it be said that the substantial rights of the defendant were not prejudiced thereby?

In the recent case of State v. Hass, 147 Minn. 269, 180 N. W. 94, it was said that a jury is not swayed by every imprudent or wrongful remark of counsel, that it must be credited with exercising good judgment, and that the trial court is in a better position than we are to know whether an improper argument did in fact prejudicially influence the jury. In State v. Brand, 124 Minn. 408, 145 N. W. 39, the county attorney in his argument characterized the defendant as a scoundrel. No objection was taken until after the argument was concluded. There was no doubt of defendant's guilt. The refusal of the trial court to grant a new trial for misconduct of the county attorney was sustained. In State v. La Bar, 131 Minn. 432, 155 N. W. 211, the county attorney imputed improper motives to certain police officers and an attempt to defeat the prosecution. The court remarked that this was overstepping the bounds of legitimate argument. A new trial was granted, but on other grounds.

In Smith v. Great Northern Ry. Co. 133 Minn. 192, 158 N. W. 46, the whole subject was carefully considered and the governing principles clearly stated: A new trial for misconduct of counsel is granted because the administration of justice is interfered with. Whether it should be granted is largely within the discretion of the trial court. Where the language of the argument is not justified by the record and is prejudicial in its tendency, it is the duty of the court, when requested, to direct the jury to

disregard it. A failure to do so is error, and the prejudice may be such as to require a new trial notwithstanding a cautionary instruction of the trial court. The statement, as a fact within counsel's knowledge, of something which is not in evidence, is necessarily wrong. In State v. Fournier, 108 Minn. 402, 122 N. W. 329, a new trial was ordered because the county attorney persisted in asking improper questions for the manifest purpose of creating prejudice in the minds of the jurors.

In Brown v. Swineford, 44 Wis. 282, 28 Am. Rep. 582, Chief Justice Ryan said:

"Prejudice has no more sanction at the bar than on the bench. * * * It is the * * * right of counsel to indulge in all fair argument in favor of * * * his client; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. * * * The very fullest freedom of speech * * * should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing. * * * If counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial or for a reversal in this court."

In a later case, it was said: "A case that cannot fairly be won upon the evidence by the use of legal and lawyer-like methods presumably does not deserve to be won at all." Masterson v. Chicago & N. W. Ry. Co. 102 Wis. 571, 78 N. W. 757.

The views thus expressed accord with our own. Appeals to prejudice are wholly contrary to the Anglo-Saxon instinct for fair play in all contests in or out of court. They can only tend to deprive the accused of the temperate and impartial trial accorded to him by our system of laws. We think the prejudicial effect of the remarks of the prosecuting attorney was not overcome by the instruction we have quoted. It might be possible to hold otherwise if the prosecuting attorney had not so persistently continued to transgress the rules. True, the inflammatory language was uttered in the heat of argument. Its violence may have been in a measure discounted by the jury, but, after making all due allowances for the circumstances under which it was uttered, it seems to us that it cannot be said that it was not highly prejudicial to the defendant. We think the

trial court should have interfered, possibly before objection was made, certainly after it was made. As was said in Hall v. U. S. 150 U. S. 76, 14 Sup. Ct. 22, 37 L. ed. 1003: "The presiding judge, by declining to interfere, notwithstanding the defendant's protest against this course of argument, gave the jury to understand that they might properly and lawfully be influenced by it," thereby prejudicing the defendant with the jury and entitling him to a new trial.

It cannot be said that the proofs of defendant's guilt were so clear and conclusive that this court can say affirmatively he could not have been harmed thereby. State v. Nelson, 91 Minn. 143, 97 N. W. 652, is, therefore, not in point.

The defendant in a criminal action, at his own request and not otherwise, is allowed to testify, but his failure to testify creates no presumption against him and shall not be alluded to by the prosecuting attorney or by the court. Section 8376, G. S. 1913.

The failure of this defendant to give his testimony cannot be regarded as tantamount to an admission of guilt. To so regard it is to fly in the face of the statute. If a defendant is to be deemed guilty because he does not give his testimony, the statute is a delusion and a snare and may as well be repealed as a formal but meaningless assurance of a right which the courts are not bound to respect.

We conclude that the defendant has not had a fair trial. The order denying the motion for a new trial is reversed and the case is remanded to the district-court. The warden of the Minnesota State Prison is hereby directed to deliver the defendant to the sheriff of Hennepin county on his application, who will return him to that county for a new trial.

HALLAM, J. (dissenting).

I do not justify the conduct of the prosecuting officer or the attitude of the court in permitting it. I think, however, the majority opinion exaggerates the damage caused by the use of such language in addressing a jury. Jurors are usually men of practical judgment and discrimination and intemperate language in argument is quite as likely to prejudice the advocate's cause as to help it. It may be that, under some circumstances, such conduct would warrant a reversal. But, in view of the character of the defense in this case, it seems to me the conduct of the prosecutor was not sufficient to warrant setting aside the verdict of the jury. Defendant

did not take the stand. He had a right to remain silent and the statute forbids that his silence be commented upon. We may, however, comment upon the fact that his companion Connors also remained silent. Had these two been the innocent men they claim to be, fraternizing with officers of the law 20 miles away, at the time this crime was committed, Connors' testimony could not have left the matter in much doubt.

In my judgment the case is one calling for the application of the wholesome rule laid down in State v. Nelson, 91 Minn. 143, 97 N. W. 652.