STATE v. SAMUEL MILLER.[1]

January 6, 1922.

No. 22,477.

**New trial because of prosecutor's misconduct.**
    1. Whether a new trial should be granted upon the ground of misconduct of the prosecuting attorney, is largely in the discretion of the trial judge. There was no abuse of that discretion.

**New trial because of newly discovered evidence.**
    2. The denial of a new trial upon the ground of newly discovered evidence proper under the showing made.

**Admission of evidence—charge to jury.**
    3. The record presents no reversible error, either in the rulings upon the admissibility of evidence, or in the charge.

Defendant was indicted by the grand jury of Hennepin county charged with the crime of murder in the first degree, tried in the district court for that county before Leary, J., and a jury, and found guilty of manslaughter in the first degree. From an order denying his motion for a new trial, defendant appealed. Affirmed.

[1] Reported in 186 N. W. 142.

*A. M. Cary*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Assistant Attorney General, *Floyd B. Olson*, County Attorney, and *Arthur Markve*, Assistant County Attorney, for respondent.

QUINN, J.

Defendant was indicted, charged with murder in the first degree. Upon trial he was convicted of manslaughter in the first degree. From an order denying his motion for a new trial upon the grounds of errors of law occurring at the trial, misconduct of the prosecuting attorney and newly discovered evidence, this appeal was taken.

At a little before midnight on May 11, 1920, defendant left his place of employment, taking with him the money proceeds of the day and a loaded pistol which he put in his raincoat pocket. He walked south a couple of blocks on Second avenue and went into the Miller hotel, where he met James Marek, whom he had known for some time and with whom he had had trouble some time before. An altercation followed. Defendant went out onto the sidewalk, Marek followed him. Defendant testified that when he reached the sidewalk Marek struck him, knocked his hat off and threatened him; that he backed up along the walk some 50 or 60 feet, Marek following and striking at him; that he (defendant) had his hand in his pocket where the pistol was and that Marek said: "If you have got anything I will make you pull it"; that defendant then backed up against the wall of a building adjacent to the walk and attempted to pull the pistol from his pocket, when it accidentally discharged, the bullet entering the body of Marek and causing his death on the following day. There were several men standing on the walk near the scene at the time.

Leonard Peterson, who was passing and witnessed the affair, testified upon the trial and seems to have told what he saw in an impartial way. Two officers near by heard the shot and quickly appeared upon the scene. Marek was lying upon the walk. The officers inquired of the bystanders as to who did the shooting, but could get no information except from Peterson, who showed them where the man went who did the shooting. They pursued and

found the defendant coming from the basement back of a barber shop. He had disposed of the pistol and discarded his rain coat, and he denied all knowledge of the shooting. He was taken into custody and on the following day taken before Marek, who was in a hospital, but Marek said defendant was not the man who shot him. The defendant was then released, but on the following day the officers again began search for him which continued until June 28, when he was arrested in California under the name of Sam Banks. After leaving Minneapolis on May 13 he went to Chicago, Kansas City, Tulsa, El Paso and then to California.

One Louis Banks, a taxicab driver about the Miller hotel, was the only witness called from the bystanders referred to. His testimony was strongly on the side of the defense. It is claimed on the part of the prosecution that the state was unable to learn the names or whereabouts of any other of the said bystanders.

The error most strongly urged by the defense upon this appeal relates to the alleged improper remarks of counsel for the prosecution in his address to the jury. Shortly after the prosecuting attorney commenced his argument to the jury, counsel for the defense requested that the balance of the argument be taken down by the reporter and it appears in the record. Thereafter during his argument the prosecuting attorney made the following statements to the jury:

"That this bunch of men who stood down there on that corner would never have said anything, I think is fairly indicated by all that you have heard here, except this friend of his who comes and tells the story to support his friend. * * * They made inquiry among the friends of this man Banks who testified here today, they made inquiry of others. * * * "

"She has no interest in it either way. If she had any interest in it, it would naturally have been rather on the side of what I should term 'The rest of the gang' down there at the Miller Hotel. * * * "

"If there was any danger there for his little friend, this defendant, he was there to protect him, he was there to see that Sam was not hurt if there was any danger there. * * * "

"And, further, would these other men who stood around there, these several men of whom Peterson told you who stood off there somewhere in front of that hotel lobby,—who are those other men, and why are they not here? Why cannot they be found? Of course, Banks says that he knew one or two of them, but they have gone away and cannot be found. If there were any of them anything different than friends and associates of this defendant, if they were anything else, why didn't they make themselves known? If there was no one there that was honest, if there was no one there beside Peterson who was upright and wanted to tell what they saw, who were truthful and not sticking up for this defendant, if there were any of them I say who had any other inclination, why didn't they come, why didn't they tell, why are they not here? It is reasonable to suppose that those men who stood there were probably all friends of the defendant."

Whereupon counsel for the defendant stated: "At this time I wish to take an exception to these remarks as outside of the evidence." The court replied: "Take your exception after the argument. I don't see anything the matter with that. You will have the entire speech and we will have it understood that you can take your exception afterward and do not interrupt." Counsel for defendant said: "That is satisfactory." No further exceptions were taken during the argument or at its close, nor until the motion for a new trial was heard. If there was anything prejudicial to the defendant in the prosecuting attorney's closing address, exception should have been taken at the close of the argument. It is too late for such objections upon motion for a new trial. Carlisle v. U. S. 194 Fed. 827, 114 C. C. A. 531; Harvey v. State, 35 Tex. Cr. R. 545, 34 S. W. 623; State v. Spurling, 115 La. 789, 40 South. 167; Kennedy v. Commonwealth, 14 Bush. (Ky.) 340; Choen v. State, 85 Ind. 209.

The attorney indulged in severe characterization of the accused as being of a cowardly and sneaking nature, one who hates and a murderer. Whether in so doing he overstepped the bounds of propriety we need not determine. Whether a new trial should have been granted on account thereof was largely within the discretion of

the trial judge. He saw and heard the witnesses and was in a position to best judge of the situation. We have considered the language complained of with care and are unable to arrive at the conclusion that it was such as to deprive the accused of a fair trial. The rule applicable is well established in this state. State v. Bernstein, 148 Minn. 301, 181 N. W. 947, and cases there cited. But this case does not come within the rule of that case.

Exceptions were taken to parts of the address in which the witness Banks and the other bystanders at the shooting were referred to as friends and associates of the defendant. We see nothing to criticize in this reference. These men were all present at the time the fatal shot was fired; they offered no assistance to the man who received the mortal wound nor to the officers who were in pursuit of the perpetrator of the act. When asked by the officers who did the shooting, they withheld all information, if they had any. These were matters about which the jury was entitled to be informed and to which the attorney had a right to allude. A reading of Bank's testimony discloses at once his bias in no uncertain way. The officers failed to obtain the names or to ascertain the identity of the other bystanders, yet their affidavits were forthcoming upon a showing for a new trial on behalf of the defendant.

At the trial defendant went upon the stand as a witness in his own behalf. He testified as to the circumstances leading up to the shooting and that it was accidental. The affidavits filed in support of the motion for a new trial upon the ground of newly discovered evidence, could affect the case only as to matters preliminary to the fatal act, and in these regards they only corroborate the testimony about which there was little or no dispute. That matter was, under the circumstances, wholly within the discretion of the trial judge. We discover no reversible error either in the ruling upon the admissibility of evidence or in the charge of the court to the jury.

Affirmed.