## STATE v. RAY BOICE.[1]

December 21, 1923.

No. 23,516.

**Conviction sustained by evidence.**
1. The evidence was sufficient to support the verdict of the jury that the defendant was the father of the illegitimate child of the complaining witness.

**Refusal to admit letters in evidence sustained.**
2. Defendant was not prejudiced by the court's refusal to receive in evidence letters written by another man to the complaining witness, she having admitted that she had no affection for the defendant and that she had a love affair with the writer of the letters.

**New trial because of incompetent juror.**
3. The incompetency of a juror does not entitle the defeated party to a new trial as a matter of right. State v. Durnam, 73 Minn. 150, followed.

**Statement of prosecutor to jury prejudicial.**
4. Substantial rights of the defendant were prejudiced by a state-

[1]Reported in 196 N. W. 483.

ment made by the county attorney in his closing argument to the jury, which was entirely outside the record and was calculated to place witnesses for the state in a better light and to add to the weight of their testimony.

Complaint in the district court for Fillmore county charging defendant with the paternity of an unborn child. The matter was heard by Meighen, J., and a jury which found defendant guilty as charged in the complaint. From an order denying his motion for a new trial, defendant appealed. Reversed.

*Duxbury & Duxbury*, for appellant.

*S. C. Pattridge*, for respondent.

LEES, C.

Defendant was accused of being the father of complainant's illegitimate child, was found guilty and has appealed from an order denying his motion for a new trial.

The child was born September 1, 1922. The mother was then 19 years of age. She testified that the defendant first had intercourse with her in the evening of January 9, 1922, at the house where she was employed as a domestic servant. Her previous acquaintance with the defendant was very brief. Her story, as set forth in the record, is not particularly convincing. She seems to be lacking in intelligence, and this may explain some things which otherwise are difficult to understand.

Defendant is a single man, 32 years old, who lived alone on a farm near the one where the girl was employed. He denied the charge unequivocally. He produced witnesses who testified that he was at their house during the evening of January 9 and not at the house of the girl's employer. He also called as witnesses six of his neighbors who testified that he had always borne a good reputation for chastity. It would serve no useful purpose to make a statement of the material portions of the evidence. After giving it careful consideration, we reach the conclusion that it was sufficient to justify the jury in finding the defendant guilty.

As is usual in such cases, defendant attempted to fasten suspicion upon another man. The girl admitted that she corresponded

with this man; that she had a love affair with him; and that she had no affection for the defendant. She was asked to produce letters she had received from the man and produced 15. Five of them were offered in evidence and excluded upon the state's objection, and the ruling is assigned as error. The first letter was dated August 28, 1920, and the last February 7, 1922. The five offered in evidence abound in extravagant professions of affection and are filled with terms of endearment. They show a desire on the part of the writer to meet the girl. He lived at or near Lanesboro, Minnesota, and she about 10 miles away. Defendant's counsel contend that, if the letters had gone to the jury, they would have raised a doubt as to defendant's guilt. The contention has some force, but, if it be conceded that the letters should have been received, it does not follow that defendant was prejudiced by their exclusion, because the girl's admissions, to which we have already adverted, proved everything shown by the letters.

One of the jurors was the husband of complainant's cousin. That fact was not disclosed until after the verdict was returned. It was returned by 10 of the jurors, two refusing to concur in it. The juror mentioned was one of the 10. It does not affirmatively appear that when the jury was impaneled he was questioned as to his relationship with the complainant. The rule is that a defeated litigant is not entitled as a matter of right to have a verdict set aside because a juror was incompetent, although his incompetency was not known or discovered until after the trial. In such a case there may be an appeal to the discretion of the trial court, whose duty it is to consider the nature of the objection to the juror, the diligence exercised to ascertain it in due time, and the other circumstances of the case. State v. Durnam, 73 Minn. 150, 75 N. W. 1127. We should not be inclined to disturb the verdict on this ground alone, but it is a matter for consideration in determining whether defendant had a fair trial.

It was shown that late in February, 1922, the complainant and the defendant spent the night at the house of a neighbor, while he and his wife were absent. The children had been left at home. One of them was a little girl 10 years old. She was called as a wit-

ness for the state. Her testimony would convince anyone that the defendant had sexual intercourse with the complainant on the occasion above mentioned. The child's mother had advised the complainant to see the defendant, tell him of her condition and ask him what he intended to do. She was a witness for the state. So was the child's father. They testified to statements made by the defendant which might be construed as qualified admissions of guilt. We infer from the record that the little girl's mother was sharply criticized by defendant's counsel in the argument to the jury because she had permitted her daughter to become a witness in such a case as this. When the county attorney addressed the jury, referring to the mother, he said:

"Just the other night the mother of this little girl came to me and asked that the little girl be excused from going on the stand in this case."

Defendant's counsel took exception to the remark as prejudicial and not justified by anything appearing in the record. The court said:

"I don't recall any evidence to that effect. If there was * * * it has escaped by memory. * * * If there was * * * anything tending to prove that fact, you will give the argument of counsel such consideration as you deem it entitled to. On the other hand, if there was no such evidence and if the statement made is simply something that counsel is now saying without any evidence produced and received in court to support it, you will entirely disregard it."

The county attorney's statement is another illustration of the too frequent disregard of the rule which forbids counsel from traveling out of the record to inject extrinsic matters into the argument. Sometimes the rule is transgressed to influence the jury, as in State v. Clark, 114 Minn. 342, 131 N. W. 369, and State v. Bernstein, 148 Minn. 301, 181 N. W. 947, and sometimes for the purpose of affecting an impartial review by this court of the decision of the trial court, as in State v. Schomaker, 149 Minn. 141, 182 N. W. 957. In State v. Peterson, 153 Minn. 310, 190 N. W. 345, it was said that,

notwithstanding the court's many and pointed expressions of disapproval, attorneys have continued to persist in offending. Since repeated admonitions have failed to correct the bad practice, we think the time has come to enforce the rule by setting aside verdicts even though approved by the trial court, when it is probable in the view of this court that the misconduct of counsel prejudiced the appellant's right to have the issues determined solely from a consideration of the evidence in the case. A new trial is granted, not as a disciplinary measure, but because the orderly administration of justice has been interfered with. Provocation by his adversary is often urged as justification for the misconduct of counsel. Speaking of this, in connection with the subject in general, Mr. Justice Stone said, in Hanskett v. Broughton, supra, page 87, 195 N. W. 794, that one wrong cannot excuse another.

It has been suggested that in criminal cases the state may not appeal, that a verdict for the defendant is final, and, since his counsel has the closing argument, he may travel out of the record and appeal to passion and prejudice at will, and that to compel counsel for the state to observe the rule is to handicap the state to the decided advantage of the defendant. The answer to this is that trial judges have ample power to keep counsel on both sides within bounds. The court may and should interfere without waiting for an objection. We think there is no reason to apprehend that trial judges will not control counsel who wilfully violate rules regulating the scope of legitimate argument.

The county attorney concedes, as he must, that he should not have made the statement, but contends that it was not so prejudicial as to be ground for reversal. The testimony of the little girl was certainly damaging to the defendant. A jury would be apt to conclude that this was not the first time he had been sexually intimate with the complainant and that her testimony as to the time when their relations began was true. Moreover, the testimony was directly contradictory of the defendant's unqualified denial of misconduct with complainant at any time or place. It is reasonable to suppose that the jurors looked with disfavor upon the mother of a little girl who permitted her child to recount in a public court room

all she had seen and heard on the occasion in question. Most mothers would do everything they could to obliterate the impression such an incident would make on the mind of a child. Here was a witness, professing to have no interest in the case, who was apparently willing to have her child give all the details of the occurrence she had witnessed. It would detract from the weight of the testimony she and her child had given to have the jury believe that such was the case. To remove the impression from the minds of the jury, the county attorney went outside of the record. Naturally the jury accepted his statement, which placed both witnesses in a more favorable light and added to the weight of their testimony.

We have reached the conclusion that the defendant did not have a fair trial, and hence the order is reversed and a new trial granted.