# STATE v. GEORGE F. LEMKE.[1]

January 26, 1940.

No. 32,189.

[1]Reported in 290 N. W. 307.

*Thomas W. McMeekin,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, *Edward J. Goff,* County Attorney, and *William G. Compton,* First Assistant County Attorney, for the State.

GALLAGHER, CHIEF JUSTICE.

Defendant was indicted for manslaughter in the first degree. The indictment charged that on December 10, 1938, at Minneapolis, defendant, intending to procure an abortion on one Rhoda Waetjen, who was then pregnant, used certain instruments upon her womb and body, thereby inflicting mortal injuries from which she died on that date. It also charged that the use of the instruments and the procuring of the miscarriage was not necessary to preserve either the life of the said Rhoda Waetjen or the unborn child. Defendant was convicted. He appeals from the order denying his motion for a new trial. On this appeal defendant is represented by counsel other than those who represented him at the trial.

. Assigned as errors are the following: (1) Insufficiency of the evidence to sustain the verdict; (2) errors of law occurring at the trial and consisting principally of (a) failure of the trial court to grant defendant's motion for a mistrial because of prejudicial statements made by the prosecutor in his opening statement to the jury; (b) improper admission of certain medical testimony; and (c) improper cross-examination by the state of one of its witnesses; (3) prejudicial misconduct of the prosecuting attorney; and (4) errors in the court's charge which deprived defendant of a fair trial.

At the time involved herein defendant was a licensed physician practicing his profession in the city of Minneapolis. While engaged in general practice, he specialized in diseases and ailments of women. One Gladys Otterbeck was employed in his office. She was not a nurse, but assisted defendant generally in his work. Rhoda Waetjen, age 22, with whose death defendant is

charged, was employed in the Miller Hospital as a maid. She consulted defendant on December 8, 1938, and returned for treatment about noon on December 10, the day of her death. Defendant, in the presence of Miss Otterbeck and with such assistance as she was asked by him to render, performed the operation which the state claims was an illegal abortion and which resulted in Miss Waetjen's death. It is the contention of defendant that the abortion occurred before Rhoda consulted him and that what he did was for the purpose of saving her life and preserving her health. Rhoda died at about two p. m. during the course of the operation. The coroner's office was notified about five p. m. of the same day, and an autopsy was performed that night. This prosecution followed.

1. A careful examination of the record discloses ample evidence upon which to sustain a conviction. A detailed account of the testimony will serve no useful purpose. Reference will be made, however, to some of it which strongly indicates defendant's guilt. Miss Otterbeck, who had been employed by defendant for more than three years, testified that after Miss Waetjen's first visit on December 8 defendant told her that Rhoda was to return on Saturday (December 10) "for an abortion"; that on the latter date she did return, and while the girl was preparing for the operation Miss Otterbeck sterilized the instruments defendant was to use. After Rhoda was disrobed Miss Otterbeck obtained from her five ten-dollar bills which she gave defendant. We omit the gruesome details of the operation as described by her. During the course thereof Rhoda died. Miss Otterbeck also testified that defendant was engaged in the business of performing abortions and that he performed between 15 and 25 each month, for which he was paid from $50 to $500 each. She described how the $50 obtained from the girl was carefully wiped off so as to avoid any possible fingerprints and how the substances procured in the operation were disposed of. Many other details, including admonitions by defendant not to disclose what occurred and suggestions that she hide his office books, were related by Miss Otterbeck.

Dr. B. J. Clawson, a pathologist from the University of Minnesota, testified that he conducted an autopsy on the body on December 10 at about 6:45 p. m.; that from his examination, which he described in considerable detail, he concluded that the foetus had been severed within five hours of the autopsy, prior to which time it had been alive; that there was, in his opinion, based on what he had found, no necessity of an induced abortion; that he believed the abortion could easily have been produced in the manner described by Miss Otterbeck. Dr. Charles A. Hobbs, a practicing physician and surgeon and deputy coroner of Hennepin county, who was present at the autopsy, testified to substantially the same effect.

For defendant, Dr. Charles Kistler testified that Miss Waetjen came to his office in Minneapolis for examination on December 1 and also on December 3. Examination made by him at that time disclosed indications of pregnancy but he was not certain as to whether she was with child. Rhoda told him that she had been taking bromides for about 30 days in quantities that the doctor thought would produce bromin poisoning. He recommended that she go to a hospital for observation.

Defendant admitted having performed similar operations in the past, but insisted that he had done so only when necessary to save life. With reference to the operation on Rhoda Waetjen, he testified that she was suffering from the effects of an abortion when she first came to him and that the operation which he conducted on December 10 was for the purpose of relieving her from the results of that abortion; that such an operation was necessary to save her life; that during the course thereof she had an epileptic fit and then fell into a deep coma; that her death followed.

Clearly, the testimony was for the jury as to whether defendant performed an illegal abortion or whether what he did constituted proper treatment after a previous abortion, as contended by him. Conceding that the most forceful of the witnesses for the state was an accomplice of defendant, her testimony was adequately corroborated by others not connected with the crime, including a

sister of the deceased, who accompanied her to defendant's office shortly before the operation, the medical experts to whose testimony we have made reference, and Miss Emma Guth, whose testimony will hereafter be referred to. In fact, defendant himself corroborated Miss Otterbeck in many respects. Corroborating testimony is sufficient if it tends in some degree to establish the guilt of the accused. State v. Baker, 161 Minn. 1, 200 N. W. 815.

We conclude that the jury was justified in returning a verdict of guilty.

2(a) Appellant claims that the prosecutor, in his opening statement to the jury, declared that the state was prepared to prove that defendant's business was that of doing abortions on women; that defendant charged exorbitant prices for these abortions; and that a witness would testify that defendant sent many girls whom he had aborted out to her home for care. What was said to the jury on behalf of the state does not appear either in the record or as part of the settled case. Such being the state of the record, error is not made to appear. State v. Hankins, 193 Minn. 375, 258 N. W. 578.

(b) Dr. B. J. Clawson, University pathologist, was asked with reference to an autopsy performed shortly after the death for which defendant was indicted: "Were you able to determine from the examination of this body of this girl, and the different things that you saw, as to whether in your opinion that induced abortion was necessary to save the life of this woman?" He was permitted to answer and express his opinion. The question could have been more accurately worded. Read in its context, it quite clearly refers to the observations made by the witness in the course of the autopsy which had been previously detailed. Consequently, there was no prejudicial error in this respect. The medical witnesses were permitted to express opinions on the assumption that the testimony of defendant's assistant was true. In this we see no error. Ordinarily, opinion evidence is not objectionable because it goes to the "ultimate issue." State v. Cox, 172 Minn. 226, 215 N. W. 189; In re Estate of Olson, 176 Minn. 360, 370, 223 N. W. 677.

Dr. Hobbs, deputy coroner of Hennepin county, who was present at the autopsy, was asked if he had an opinion as to the cause of the death. After an affirmative answer he was asked to express his opinion. He then said that the woman died from a criminal abortion. While the opinion was on an ultimate issue of the case, we do not feel that the jury was so affected thereby as to make a new trial necessary. The answer as given was not called for by the question. No motion was made to strike it from the record. Hence defendant has no grounds for complaint. Other objections to the medical testimony offered by the state are without merit.

(c) Miss Emma Guth, called as a witness by the state, testified that she had known defendant for three years, during the course of which time she had taken from 10 to 15 patients from his office to her home; that defendant told her that they were to convalesce; that in her opinion abortions had been performed on the girls; that defendant never told her what he had done to them; that she noted facts which, suffice it to say, indicated abortions had been performed. The state then pleaded surprise and was permitted to cross-examine the witness. Referring to "State's Exhibit B," which was not introduced in evidence but which appears to have been a four-page statement made by the witness in the county attorney's office on December 14 following the death, the prosecuting attorney asked the witness if she had on that date said that the defendant told her he had aborted the patients; that she saw certain signs of abortion; that several of the girls failed to abort and went back to defendant. The witness replied to these questions in the affirmative.

Appellant contends that the cross-examination of this witness was improper and that defendant was thereby prejudiced. The theory that *ex parte* statements made when not under oath or subject to cross-examination are not hearsay when the party making such statements is examined with reference thereto in court has been rejected in this state. Therefore no use of such statements can be made except for the purpose of impeachment. Cross-ex-

amination by the state (or any party) of its own witness with reference to prior statements made by him is thus limited: (1) The testimony of the witness must be adverse. It is not sufficient that there has been a failure to give favorable testimony; (2) the prosecution must be surprised by this adverse testimony; (3) cross-examination must be restricted so as only to neutralize the adverse testimony to which it is directed. In setting out these principles we are merely restating what has been previously expressed by this court in State v. Saporen, 205 Minn. 358, 285 N. W. 898, and by the authorities therein cited.

In light of these rules, the cross-examination of the witness was improper. She had, in her direct examination, given no adverse testimony. Her statement to the effect that the defendant had not told her what he had done to the girls sent to her by him was not injurious to the case of the state. Defendant would be equally guilty whether he told her or not. The same can be said of her refusal to testify that she had seen certain evidence of abortion about the patients.

But even if the cross-examination was improper, we do not feel that a new trial should be granted for that reason. The record discloses no direct statement showing that defendant objected to this examination on the ground that it was improper. There appears only the state's plea of surprise, a notation that counsel conferred privately with the court, and this statement by the court: "I think I will overrule the objection. I have reason to believe the county attorney is acting in good faith." From this we can infer no more than that defendant claimed the state was not surprised. In deciding that preliminary question, the court was entitled to use its discretion. State v. Saporen, 205 Minn. 358, 285 N. W. 898. During the cross-examination defendant objected to one question as calling for a conclusion and, at the close of the state's case, moved that the testimony of the witness be stricken as immaterial. Neither the objection nor the motion called to the court's attention the fact that the hearsay rule and the restrictions on cross-examination of one's own witness had

been violated. In contrast, the record in State v. Saporen, 205 Minn. 358, 285 N. W. 898, discloses a general and proper objection to the testimony adduced during the course of the cross-examination. We conclude that because no proper objection to the cross-examination was made by defendant, the impropriety thereof does not constitute reversible error.

3. During the cross-examination of defendant the following occurred:

Q. "Isn't it a fact, Doctor, that you went in to Dr. Kistler and said, in substance, 'Now, Doctor, you are as deep in this as I am?'

A. "No.

Q. " 'And we will have to get together on this thing?'

A. "No; no such words.

Mr. Rerat: "That is an improper remark. I am going to ask Mr. Compton if he expects to prove that remark; and, if not, I am going to ask the Court to disregard that remark, as he has made other improper statements, and ask that the jury be instructed to disregard that remark, unless you will promise that you will prove that statement.

Mr. Compton: "I am not promising you anything.

Mr. Rerat: "No, because you know better. Let's conduct this along fair lines at least.

The Court: "All right, proceed.

Q. "Isn't it a fact, Doctor, that you went up to Dr. Charles Kistler's office in order to go over this thing and arrive at some explanation of your conduct up in that office?

A. "That part was not discussed whatsoever?"

Appellant contends that this cross-examination was improper and prejudicial. It was improper, but counsel for defendant did not see fit either to make a proper objection to the question or move to strike the question and answer from the record. The answer being negative was not prejudicially harmful to defendant.

4. Appellant argues that the trial court erred in failing to instruct the jury that the chief witness for the state was an ac-

complice upon whose testimony without corroboration there could be no conviction; that the testimony of the witness with respect to whom the state claimed surprise could not be considered as proof of the substantive offense charged; and that the testimony that defendant performed other abortions could not be accepted as proof that he performed the abortion from which the death for which he was indicted resulted. No requests for instructions to this effect were made by defendant, and no exception was taken to the instructions given. Such being the case, a new trial will not be ordered.

Other contentions of defendant are without merit.

Affirmed.

STONE, JUSTICE (concurring in the result).

Because the proof of defendant's guilt is so overwhelming, I concur in the result.

But lest this decision, as a precedent, be misused (possibly in the prosecution of some unfortunate who is innocent of the crime charged against him), I think we should add the following. The misconduct of the prosecution, as disclosed by the record, was so persistent and repeated that it seems almost systematic. I agree that insofar as it was manifested in the examination of Miss Guth the record is not in such shape as to justify reversal upon that ground.

The misconduct was persisted in, defiantly, during the cross-examination of defendant, as appears from the portion thereof quoted by the Chief Justice. I cannot agree that the objection then made should be held insufficient to support the assignment of error based thereon. Counsel for defendant challenged the questions propounded as "improper." Just why isn't that enough? The trial court must have assumed that the county attorney's office had information justifying the challenged questions. But both record and argument here are barren of suggestion that the objectionable questions were based upon information that there had occurred the condemning conversation implied by the questions. Such an implication, coming from such an official and

responsible source as a county attorney, is calculated to, and ordinarily does, make an immediate impression on a jury. That is why, when they are unsupported by proof, as they are here, they are prejudicial and therefore objectionable.

What has just been said will serve, I trust, as a warning sufficient to prevent future misuse of this decision. I concur in the result only because defendant's guilt is so clearly established that it is difficult for fancy, to say nothing of reason, to formulate any ground for giving him another trial.

PETERSON, JUSTICE (concurring specially).

I concur in the views of Mr. Justice Stone.

