# STATE v. GUDRUN GULBRANDSEN.[1]

March 13, 1953.

No. 35,812.

[1]Reported in 57 N. W. (2d) 419.

*Lewis, Hammer, Heaney, Weyl & Halverson,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Thomas J. Naylor,* County Attorney, and *John B. Arnold, Jr.,* Assistant County Attorney, for the State.

LORING, CHIEF JUSTICE.

This is a criminal prosecution in which defendant, a woman, is charged with first degree grand larceny. She is alleged to have unlawfully obtained $6,000 from one Gustaf A. Karlson by means of false and fraudulent representations and pretenses. The state sought to establish that defendant, Miss Gudrun Gulbrandsen, a co-worker of Karlson, upon discovering that he had savings of approximately $6,000, represented to him that she could obtain a $16,000 home for about $6,000. Karlson testified that he paid the $6,000 to defendant in two cash installments, and the state introduced evidence showing that he had withdrawn $6,000 from his savings account at about the time of the alleged transaction. There was evidence showing that defendant had deposited about $700 shortly after such withdrawal. No definite account of the balance was made by the prosecution. Defendant denied receiving any such sum from Karlson and further denied any agreement or conversation relative to the sale of real estate. The jury returned a verdict of guilty. This appeal is from an order denying the defendant's motion to vacate the verdict and grant a new trial.

■ There are several alleged errors in the proceedings. The most serious appears to relate to the alleged misconduct of the prosecuting attorney in his closing argument. While the argument is to be taken as a whole and no single phrase is to be taken out of context and used as a basis for reversal, the following examples are indicative of the tenor of the state's closing argument.

One impression that the prosecuting attorney endeavored to convey to the jury in many different ways was that, if the jury found defendant not guilty, she would be $6,000 ahead. This was done in spite of the fact that the sole defense consisted of a denial that defendant ever received any such amount. For example:

"* * * If this jury decides that she is not guilty, there is $6,000.00 that she is to the good, less what she has paid to her attorney.

      \*    \*    \*    \*    \*

"* * * She knows her way around, and she is smart and don't let anybody kid you she isn't. Any gal that picked up $6,000.00 and a very good living in the United States and only been here a couple of years and can go back to Norway with an automobile knows her way around."

There were appeals made to passion and prejudice in relating the unfortunate circumstances of the prosecuting witness and also of defendant's uncle. The state had introduced evidence of defendant's receiving money from her uncle under an allegation of a common scheme.

"* * * She has been well taken care of by her family, practically pulled the same thing on her uncle, the old gentleman here who has been taken right down the line. A year or so ago he sold his house. He has nothing. He is borrowing from his daughter."

Finally, there was a definite attempt to convey the impression that not only the prosecuting attorney himself but also the state, as an entity, was firmly convinced of the guilt of defendant and its prestige was offered as an indication of such guilt. There were expressions to the effect that the state had spent considerable public funds in attempting to recover the money and that a verdict of guilty might induce defendant to return the money in mitigation of punishment.

"* * * If she is not guilty, why does the State not know that and why do they prosecute?

      \*    \*    \*    \*    \*

"Now, there is also another question there, how actually does the State feel about this. We think it is a very, very important case, and if we didn't think it was a very important case we wouldn't be here on this trial. *We feel we know she is guilty.* We spent considerable money. We sent police and sheriffs to Chicago. McDowell said they went to every town between here and Chicago trying to look for that money. It has cost a lot of money to try this case, and *don't you think for one second that we don't know she is guilty or that money wouldn't be spent.* We have been doing everything within our power to get that $6,000.00, or whatever is left of it, for Mr. Karlson. And we are doing it as far as either Karlson or the defendant is concerned free of charge. It is gratis. The only hope that we have is that if she is found guilty to get a lessor penalty that she will come through with the money. I am telling you that because these are facts." (Italics supplied.)

The trial court should have promptly reprimanded counsel on its own motion for such a gross violation of a prosecutor's obligation to the accused. See, State v. Boice, 157 Minn. 374, 196 N. W. 483; State v. Haney, 222 Minn. 124, 23 N. W. (2d) 369.

The role of the prosecuting attorney is a difficult one in many respects, and his argument to the jury is a particularly difficult problem in discrimination. He must pursue his duty as a diligent prosecutor without transgressing his responsibility as an officer of the state, and, above all, he must refrain from unduly oppressing or burdening the accused with the vast resources or dominating position of the state government. See, State v. Silvers, 230 Minn. 12, 40 N. W. (2d) 630. In particular, he must at all times bear in mind that defendant is innocent until proved guilty, and, while it is his duty to forcefully present all material facts from which the judge or jury may conclude that defendant is guilty, he must, nevertheless, refrain from pre-condemning the accused on the authority of the government he represents. He need not make his argument entirely colorless and may state conclusions and inferences which the human mind may reasonably draw from the facts in evidence (State v. Wassing, 141 Minn. 106, 169 N. W. 485; State v. Dunn,

140 Minn. 308, 168 N. W. 2), but he is not to offer his own opinion or the opinion of "the state" as substantive evidence tending to prove defendant's guilt since such matter is not competent evidence. See extensive comments on this matter in State v. Clark, 114 Minn. 342, 131 N. W. 369; State v. Bernstein, 148 Minn. 301, 181 N. W. 947; State v. Peterson, 153 Minn. 310, 190 N. W. 345; State v. Boice, 157 Minn. 374, 196 N. W. 483; State v. Waddell, 187 Minn. 191, 245 N. W. 140; State v. Palmer, 206 Minn. 185, 288 N. W. 160; State v. Schabert, 218 Minn. 1, 15 N. W. (2d) 585; State v. Haney, 219 Minn. 518, 18 N. W. (2d) 315; State v. Haney, 222 Minn. 124, 23 N. W. (2d) 369. Nor should the fact that considerable public funds had been spent in the investigation and presentation of the case be argued as a reason for finding defendant guilty. Furthermore, especially when the sole theory of the defense is a nontaking, it should not be argued that a finding of not guilty would allow defendant to keep the money, since that is the very question to be decided. Such an argument is merely a subtle attempt to assume matters in dispute and avoid the real issue.

The argument of the prosecution was improper to such a degree that defendant was deprived of a fair and impartial trial and, therefore, defendant is entitled to a new trial.

In order to avoid any repetition of error at a second trial we shall discuss some of the other rulings assigned as error herein.

■ The court permitted a witness for the state, a deputy sheriff, to testify to the substance of a conversation between the witness and an uncle of defendant, which conversation took place in defendant's presence. The witness testified that he asked the uncle if he had given defendant any sums of money and that the uncle did not mention any $700. This matter was obviously introduced in anticipation of defendant's testimony, in accounting for a $700 bank balance, that she had received such a sum from her uncle. There was no testimony as to the conduct, silence or otherwise, of defendant in acknowledgment of the conversation. The state contends that this conversation was admissible as a statement made in the presence of defendant regarding a material fact and that de-

fendant was not deprived of her right to cross-examination, since all parties involved were witnesses for the state.

The statements were obviously introduced as proof of the substance of the statements. As such, the conversation was clearly hearsay, and the fact that the parties all appeared as witnesses does not alter this character. Extrajudicial statements of a witness are not admissible as substantive evidence. In re Estate of Olson, 227 Minn. 289, 35 N. W. (2d) 439; Ackerman v. Motor Sales & Service Co. 217 Minn. 309, 14 N. W. (2d) 345; State v. Lemke, 207 Minn. 35, 290 N. W. 307; State v. Saporen, 205 Minn. 358, 285 N. W. 898; Christensen v. Pestorious, 189 Minn. 548, 250 N. W. 363; Pullen v. C. M. St. P. & P. R. Co. 178 Minn. 347, 227 N. W. 352; Hicks v. Stone, 13 Minn. 398 (434). Nor does the fact that such statements were made in the presence of a party, without any further showing, render them admissible. 4 Wigmore, Evidence (3 ed.) § 1071; 20 Am. Jur., Evidence, § 570; Annotations, 80 A. L. R. 1235 and 115 A. L. R. 1510.

We agree with appellant that the only possible theory under which such statements would be admissible is that such statements, accompanied by silence or other evidence of acquiescence on the part of defendant, constituted an implied admission by defendant of the truth of the statements. State v. Plym, 43 Minn. 385, 45 N. W. 848; State v. Quirk, 101 Minn. 334, 112 N. W. 409; State v. Cavett, 171 Minn. 505, 214 N. W. 479 (shown on examination of briefs); State v. Graham, 176 Minn. 164, 222 N. W. 909; State v. Brown, 209 Minn. 478, 296 N. W. 582; State v. Rediker, 214 Minn. 470, 8 N. W. (2d) 527; State v. Postal, 215 Minn. 427, 10 N. W. (2d) 373. Although respondent specifically denied that it was offered under such a theory, the cases cited in support of admissibility relate to admissions by silence or actual admission. As previously mentioned, there was no testimony as to the conduct or response of defendant in light of these statements other than that the statements were made "in her presence." The admission of these statements without any further foundation was clearly erroneous. It is the conduct of the accused in view of the statements that is admissible against him.

514

The statements themselves are not admissible as proof of their substance. They are admissible only to show the circumstances under which the accused remained silent or was evasive, from which a jury may infer that such conduct is an implied admission of the truth of the statements. Furthermore, in view of the fact that defendant was under arrest and apparently under advice of counsel, and that the statements were not directed at defendant, there appears to be considerable doubt as to whether such statements would be admissible even if the silence of defendant was shown. See, State v. Brown, 209 Minn. 478, 296 N. W. 582; 4 Wigmore, Evidence (3 ed.) § 1072(4); 2 Wharton, Criminal Evidence (11 ed.) § 661; Annotations, 80 A. L. R. 1235, 1262 and 115 A. L. R. 1510, 1517. Testimony should be admitted under this theory with great caution, since it would be possible for an over-zealous prosecution to build a complete case on hearsay by merely examining witnesses in the presence of defendant.

■ Appellant also contends that there was prejudicial error in the admission of evidence dealing with the relations of defendant with other men. Without detailing the evidence, it does appear that an unusual amount of such evidence was admitted and that it was of a highly prejudicial nature. Part of this evidence was admitted under a claim of a common scheme or plan. At the conclusion of the evidence, the defense requested an instruction to the effect that the state had failed to establish any common scheme and that the jury should disregard all evidence admitted for such purpose. The court refused to give this instruction. In a prosecution for larceny by false pretenses, evidence of similar frauds or swindles is admissible to show a general system or plan, but the crimes must be so related to one another that proof of one tends to establish some element of the other. State v. Yurkiewicz, 212 Minn. 208, 3 N. W. (2d) 775; State v. Hacker, 153 Minn. 538, 191 N. W. 37; State v. Friedman, 146 Minn. 373, 178 N. W. 895, rehearing denied, 146 Minn. 380, 184 N. W. 272; State v. Fitchette, 88 Minn. 145, 92 N. W. 527; State v. Monroe, 142 Minn. 394, 172 N. W. 313.

While the disputed evidence in the case at bar did relate to defendant's relations with other men and to her receiving money from her uncle, there was no evidence that there was ever any attempt to obtain money in a manner similar to the alleged fraudulent representation involved here. Therefore, there were no facts from which a common scheme or plan could have been found. In the absence of such facts, the evidence should not have been admitted, especially when it was of such a prejudicial nature. See, State v. Haney, 219 Minn. 518, 18 N. W. (2d) 315. Furthermore, some of the questioning of defendant concerning her relations with other men were especially improper inasmuch as there was no evidence ever produced warranting such questions. See, State v. Haney, 222 Minn. 124, 23 N. W. (2d) 369; State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458. Such irrelevant material should be carefully excluded, especially when defendant's character, as such, is not in issue. State v. Stockton, 181 Minn. 566, 233 N. W. 307; City of St. Paul v. Harris, 150 Minn. 170, 184 N. W. 840; State v. Nelson, 148 Minn. 285, 181 N. W. 850.

■ There is also error assigned in the questioning of witnesses relative to defendant's possession of a gun or blackjack. While probably improper in the first instance, such questioning became severe misconduct when persisted in after objection to such questions was sustained by the court. Obviously, the innuendoes contained in the questions and not the answers were what the prosecution sought to get before the jury. See, State v. Nelson, 148 Minn. 285, 181 N. W. 850; State v. Silvers, 230 Minn. 12, 40 N. W. (2d) 630. When the improper questions and remarks of the prosecution are as serious and flagrant as indicated here, it is the duty of the trial judge to intervene *sua sponte* to protect defendant's rights, and failure to do so is reversible error. State v. Haney, 222 Minn. 124, 23 N. W. (2d) 369; State v. Morgan, 235 Minn. 388, 51 N. W. (2d) 61.

■ There is also a claim of error in the state's impeachment and cross-examination of defendant's uncle, who was called as a witness for the state. The prosecution, after some preliminary matter, made

immediate reference to a transcribed statement. After determining by a general question that there was at least one discrepancy between the transcribed statement of the witness and his present recollection, the prosecution, in effect, impeached the witness. There was never any direct questioning of the witness on the subject. The record discloses a great deal of difficulty and confusion in the examination of this witness because of his claim of difficulty in hearing and understanding. However, there was no specific claim of surprise by the state. A witness may not be cross-examined and impeached by the party calling the witness merely because the desired answer is not received. See, State v. Jensen, 151 Minn. 174, 186 N. W. 581. In view of the other errors disclosed, there might be some predisposition to believe that the prosecution was not genuinely surprised and was seeking primarily to get the extra-judicial statements of the witness before the jury. Such, of course, is not the proper purpose of impeaching testimony. State v. Saporen, 205 Minn. 358, 285 N. W. 898; State v. Lemke, 207 Minn. 35, 290 N. W. 307. Any claim of surprise is especially doubtful inasmuch as there was no direct examination of the witness on this matter. The proper manner and purpose of impeachment of a party's own witness is extensively set forth in State v. Saporen, *supra;* State v. Lemke, *supra;* State v. Jensen, *supra.*

Reversed and new trial ordered.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.